## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEE MORRELL, individually and on behalf of all others similarly situated,<br><br>                         Plaintiff,<br><br>    v.<br><br>WW INTERNATIONAL, INC.,<br><br>                         Defendant. | Civil Action No.: 20-cv-09912<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lee Morrell ("Plaintiff") bring this Class Action Complaint individually and on behalf of all others similarly situated against Defendant WW International, Inc. ("Weight Watchers," "WW," or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## FACTS COMMON TO ALL CAUSES OF ACTION

1.       This is a putative class action lawsuit against Defendant for engaging in an illegal "automatic renewal" scheme with respect to its subscription plans for WW-branded products and services that are available exclusively to consumers who enroll in one of Defendant's auto-renewal membership programs (collectively, the "WW Subscriptions," enumerated below). Defendant is an international company that offers various products and services to assist in healthy habits, including weight loss and maintenance, fitness, and mindset such as the Weight Watchers comprehensive diet program. Relevant to Plaintiff's allegations, when consumers sign up for the WW Subscriptions through Defendant's website at http://weightwatchers.com and/or its mobile application (the "WW Website" and the "WW App"), Defendant actually enrolls

consumers in a program that automatically renews customers' WW Subscriptions from month-to-month or year-to-year and results in monthly or annual charges to the consumer's credit card, debit card, or third party payment account (collectively, "Payment Method"). In doing so, Defendant's WW Website and App fail to provide the requisite disclosures and authorizations required to be made to California consumers under California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*

2.      Weight Watchers offers "a scientifically proven program for weight loss and wellness, with Digital, Studio and Personal coaching solutions to help meet your goals. For more than 55 years, WW has helped millions lose weight with the latest nutritional and behavior change science."[1] Specifically, Defendant offers the following fee-based membership programs (collectively, the "WW Subscriptions"): (1) the "Digital" membership, which includes meal tracking, curated fitness, and mindset content;[2] (2) the "Workshop" membership, which promises in-person wellness checks; and (3) the "Coaching" program, which provides a personal coach for members to create goals and action plans regarding their weight loss.[3]

3.      Consumers can sign up for one of Defendant's membership programs through the WW Website and/or the WW App. To do so, customers provide Defendant with their billing information and Defendant then automatically charges its customers' Payment Method as payments are due, typically on a monthly basis. Defendant is able to unilaterally charge its customers renewal fees without their consent, as it is in possession of its customers' Payment Information. Thus, Defendant has made the deliberate decision to bilk Plaintiff and other

---

[1] https://www.weightwatchers.com/us/about-WW.

[2] https://web.archive.org/web/20200222213824/https://www.weightwatchers.com/us/plans/onlineplus.

[3] https://web.archive.org/web/20200222211459/https://www.weightwatchers.com/us/plans/coaching.

similarly situated customers on a monthly basis, relying on consumer confusion and inertia to retain customers, combat consumer churn, and bolster its revenues.

4.     Pursuant to the ARL, online retailers who offer automatically renewing subscriptions to California consumers must: (a) obtain affirmative consent prior to the consumer's purchase; (b) provide the complete auto-renewal terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to the purchase; and (c) provide an acknowledgement identifying an easy and efficient mechanism for consumers to cancel their subscriptions.  As will be discussed below, Defendant's enrollment process for the WW Subscriptions, which can be completed through the WW Website or App, uniformly violates each of these requirements.  Defendant also provides a non-compliant post-checkout Acknowledgment Email and makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their WW Subscriptions.

5.     Specifically, Defendant systematically violates the ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in violation of Section 17602(a)(1); (ii) charging consumers' Payment Method without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Sections 17602(a)(3) and 17602(b).  Cal. Bus. & Prof. Code §§ 17602(a)(l), (a)(2), (a)(3), (b).  As a result, all goods, wares, merchandise, or products sent to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts"

under the ARL.  Cal. Bus. & Prof. Code § 17603.

6.     For the foregoing reasons, Plaintiff brings this action individually and on behalf of all California purchasers of any of Defendant's WW Subscription offerings who, within the applicable statute of limitations period up to and including the date of judgment in this action, incurred unauthorized fees for the renewal of their WW Subscriptions.  Based on Defendant's unlawful conduct, Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (ii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (iii) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (iv) unjust enrichment/restitution; and (v) violation of Cal. Civ. Code §§ 1694.5, *et seq.*

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendant.

8.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in New York.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because the Defendant's principal place of business is located in this District, and a substantial part of the events or omissions that give rise to this action occurred in this District, including, but

not limited to: (i) Defendant drafted the contracts at issue in this case in this District; and (2) Defendant received the monies paid under the contracts at issue in this case in this District. Venue is further proper here in accordance with Defendant's terms and conditions, which designate that all disputes arising under the membership agreement shall be filed only in the state or federal courts located in New York County in the State of New York.

## PARTIES

10.     Plaintiff Lee Morrell ("Plaintiff") is a citizen of California, residing in Santa Clarita, California. On or around January 3, 2018, Mr. Morrell purchased a three-month "Digital" Weight Watchers membership[4] directly from Defendant's mobile application while in California. During the enrollment process, but before finally consenting to Defendant's subscription offering, Mr. Morrell provided his credit card information directly to Defendant. At the time Mr. Morrell enrolled in his initial WW Subscription, Defendant did not disclose to Mr. Morrell all required automatic renewal offer terms associated with the subscription program or obtain Mr. Morrell's affirmative consent to those terms. Further, after Mr. Morrell completed his initial order, Defendant sent Mr. Morrell an email receipt for his purchase of a WW Subscription (the "Acknowledgment Email"). However, the Acknowledgment Email, too, failed to provide Mr. Morrell with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Mr. Morrell's WW Subscription in a manner capable of being retained by him. Mr. Morrell did not receive any other correspondence or communication from Defendant that contained the required

---

[4] Note that Defendant's "Digital" membership program has been re-branded under different names over the years. For instance, at the time Plaintiff Morrell purchased his digital-only WW Subscription, it was called "Online*Plus*." *See, e.g.*, https://web.archive.org/web/20180323225816/https://www.weightwatchers.com/us/plans/onlineplus (showing subscription offerings on WW Website as of March 23, 2018).

information.  As a result, Mr. Morrell was not placed on notice of several material terms

associated with his WW Subscription.  In particular, Mr. Morrell was not made aware of the fact

that his WW Subscription would automatically renew after the initial three-month period or of its

associated cancellation policy, the most crucial aspects of which were missing from the

Checkout Page and acknowledgment email.  Nevertheless, on April 4, 2018, three months after

he first signed up for his WW Subscription, Defendant automatically renewed Mr. Morrell's

WW Subscription and charged Mr. Morrell's Payment Method the full standard monthly rate

associated with his WW Subscription.  Thereafter, Defendant continued to automatically renew

Mr. Morrell's WW Subscription on a monthly basis, charging his Payment Method an additional

seventeen times, for a total of eighteen unauthorized charges amounting to $384.00 to Mr.

Morrell's Payment Method.  Defendant's disclosures on the Checkout Page and in the

acknowledgment email fail to comply with the ARL, which deems products provided in violation

of the statute to be a gift to consumers.  *See* Cal. Bus. & Prof. Code § 17603.  Had Defendant

complied with the ARL, Mr. Morrell would have been able to read and review the pertinent

automatic renewal terms on the Checkout Page prior to purchase, and he would have not

subscribed to Weight Watchers or he would have cancelled his WW Subscription earlier, *i.e.*,

prior to automatic renewal at the end of a given renewal term.  As a direct result of Defendant's

violations of the ARL, Mr. Morrell suffered, and continues to suffer, economic injury.

11.     Defendant WW International, Inc. ("Weight Watchers," "WW," or "Defendant")

is a Virginia corporation with its principal place of business at 675 Avenue of the Americas,

New York, New York, 10010.  WW is an international company that offers various products and

services to assist in healthy habits, including weight loss and maintenance, fitness, and mindset

such as the Weight Watchers comprehensive diet program.  Relevant here, Defendant owns and

operates the WW Subscriptions, which it markets to consumers through the WW Website and App.  Defendant is also responsible for the promotion, advertisement, and/or marketing of the WW Subscriptions, and it owns and operates the WW Website and App, where it markets and sells the WW Subscriptions.  Defendant sells – and, at all times during the Class Period, sold – the WW Subscriptions in California and New York and has done business throughout California and New York, and throughout the United States.  Defendant also made automatic renewal or continuous service offers to consumers in California and throughout the United States via the WW Website and/or App during the Class Period.

12.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## FACTUAL ALLEGATIONS

### A.     Background On The Subscription e-Commerce Market

13.     Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years.  The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[5]  According to TechCrunch.com, "[s]ubscriptions have turned into a booming business for app developers, accounting for $10.6 billion in consumer spend on the App Store in 2017, and are poised to grow to $75.7 billion by 2022."[6]  Subscription e-commerce services now target a wide range of customers and cater to a variety of specific interests.

---

[5] *See* https://www.coredna.com/blogs/ecommerce-subscription-services.

[6] TechCrunch, *Sneaky subscriptions are plaguing the App Store* (Oct. 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

14.     "Founded in the early '60s by a New York housewife, Weight Watchers applied a conversation-heavy, group-therapy model to the frustrations of dieting[.]"[7]  Early on in its corporate existence, Weight Watchers adopted and developed a "business model[] based on collecting monthly membership fees and "hawking diet foods to members[.]"[8]  Using this model, Defendant "swelled into a corporate titan of weight loss" over the ensuing four decades by "selling low-fat prepared meals, partnering with [celebrities], and hosting support groups and diet classes for its calorie-counting clientele."[9]  To keep up with the evolving technological landscape, Weight Watchers launched its mobile application in 2009, and it launched "Personal Coaching and 24/7 Live Chat" in 2014.[10]  Recognizing "how important digital is as an entry point for consumers[,]"[11] in late 2015, Defendant shifted its focus to the development of "new digital initiatives" that would "transform [its] technology and product platform from what was once a competitive liability to what is now a competitive strength, aimed at engaging … [new] members."[12]  "Through an advertising blitz, Weight Watchers [] sought to recast itself as a real-life support coach in a digital-diet world."[13]  In early 2016, Defendant invested $43 million of new cash equity "in service offerings and promotional and advertising campaigns … ,

---

[7] The Washington Post, *Oprah grabs a slice of Weight Watchers, but the diet giant might still be doomed* (Oct. 19, 2015), *available at* https://www.washingtonpost.com/news/business/wp/2015/10/19/oprah-grabs-a-slice-of-weight-watchers-but-the-diet-giant-might-still-be-doomed/.

[8] Los Angeles Times, *Column: First Oprah, now a scientific study: Weight Watchers offers wary investors another story* (Feb. 22, 2016), *available at* https://www.latimes.com/business/hiltzik/la-fi-mh-first-oprah-weight-watchers-gimmick-20160222-column.html.

[9] *Id.*

[10] *Evolution & history of WW program*, https://www.weightwatchers.com/nz/wellbeing/evolution-of-ww.

[11] Diginomica, *Weighing in on the digital/offline balance at Weight Watchers* (Mar. 2, 2017) , *available at* https://diginomica.com/weighing-digitaloffline-balance-weight-watchers.

[12] *Id.* (quoting then-Director of Weight Watchers Chris Sobecki) (internal quotation marks omitted).

[13] *See supra* note 7.

contributing to sharp improvement in US subscriber counts and paid weeks."[14]  Defendant has

also "redesigned" the WW Website and App to change "how program information and pricing

are presented, which result[ed] in higher conversion."[15]  By 2018, WW had been "through a

digital transformation program of its own, one of variable success but which recognizes that the

traditional 'turning up for meetings' business model needs to have digital avatars."[16]

15.     The production, sale, and distribution of subscription-based products and services

is a booming industry that has exploded in popularity over the past few years.  According to

Forbes, "[t]he subscription e-commerce market has grown by more than 100% percent a year

over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up

from $57.0M in 2011."[17]

16.     However, there are downsides associated with the subscription-based business

model.  While the subscription e-commerce market has low barriers and is thus easy to enter, it is

considerably more difficult for retailers to dominate the market due to the "highly competitive

prices and broad similarities among the leading players."[18]  In particular, retailers struggle with

the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver

---

[14] *Weight Watchers finds boost with Oprah and Apple* (Apr. 19, 2017), *available at* https://www.meatpoultry.com/articles/16222-weight-watchers-finds-boost-with-oprah-and-apple.

[15] Diginomica, *Weighing in on the digital/offline balance at Weight Watchers* (Mar. 2, 2017) , *available at* https://diginomica.com/weighing-digitaloffline-balance-weight-watchers.

[16] Diginomica, *In pursuit of health and wellness - Fitbit, Weight Watchers digitally disrupt their business models* (Mar. 12, 2018), *available at* https://diginomica.com/pursuit-health-wellness-fitbit-weight-watchers-digitally-disrupt-business-models.

[17] Forbes, *The State Of The Subscription Economy, 2018* (Mar. 4, 2018), https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[18] McKinsey & Company, *Thinking inside the subscription box: New research on e-commerce consumers* (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

superior end-to-end experiences."[19]  Yet, retailers have also recognized that, where the recurring

nature of the service, billing practices, or cancellation process is unclear or complicated,

"consumers may lose interest but be too harried to take the extra step of canceling their

membership[s]."[20]  As these companies have realized, "[t]he real money is in the inertia."[21]  To

facilitate consumer inertia, several subscription e-commerce companies, including Defendant,

fail to fully disclose the terms of their automatic-renewal programs.

17.    Defendant has successfully implemented this tactic.  According to Nick Hotchkin,

WW's CFO, "2018 was an exceptional year, with strong member recruitment, revenue growth[,]

and margin expansion[.]"[22]  As of March 2017, Defendant's "[n]ew subscribers to the meeting

model [we]re up 10% year-on-year to 1.1 million, while online subscribers [we]re up 9% to 1.5

million."[23]  By September 2018, Defendant's membership count climbed to a total of 4.5 million

people, which is "1 million more than a year earlier[.] … That total figure includes 1.6 million

people who attend its meetings," and an impressive 2.9 million online subscribers.[24]  Defendant

has been "seeing especially fast growth coming from online subscribers."[25]  Indeed, in Fiscal

---

[19] *Id.*

[20] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014),
https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[21] *Id.*

[22] GlobeNewsWire, *WW Announces Fourth Quarter and Full Year 2018 Results* (Feb. 26, 2019), *available at* https://www.globenewswire.com/news-release/2019/02/26/1742897/0/en/WW-Announces-Fourth-Quarter-and-Full-Year-2018-Results.html.

[23] Diginomica, *Weighing in on the digital/offline balance at Weight Watchers* (Mar. 2, 2017), available at https://diginomica.com/weighing-digitaloffline-balance-weight-watchers.

[24] Fortune, *Weight Watchers Changes Name to 'WW' in Big Bet on Wellness* (Sep. 23, 2018), *available at* https://fortune.com/2018/09/24/weight-watchers-name-change/.

[25] *Id.*

Year 2018, the "bulk of WW's revenue – 80% – [came] from membership subscriptions[.]"[26]
This growth trend continued until (and beyond) August 2020, when Mindy Grossman, WW
President and CEO, announced that Defendant "ended the quarter with [its] highest-ever Q2
subscriber base of 5.0 million, driven by a record level of digital subscribers, which were up 23%
year-over-year."[27]

### B.     Online Consumer Complaints About The WW Subscriptions

18.     Defendant's recent growth in revenues and subscriber count with respect to its
WW Subscriptions coincides with a sharp decline in subscriber satisfaction as the WW Website
and App have become riddled with "dark patterns."  A dark pattern is "a process design that
requires several complex procedures to do simple things."  One recent consumer complaint
posted on Twitter that "WW's financial behavior over the last few years [has been]
unacceptable" and indicated that Defendant has been using "dark patterns, steep cancellation
fees, painful cancelation [sic] process, [and] recurrent billing AFTER trying to cancel" to prevent
user unsubscription through the WW Website or App by adopting complex procedures to
increase the friction in the subscription cancellation process and keep the user subscribed.[28]
Defendant's utilization of these dark patterns – especially in conjunction with its failure to fully
disclose the terms of its automatic-renewal programs (discussed further below) – has led to a
reduction in churn rates by making it next to impossible for subscribers to cancel their WW
Subscriptions.  It has further led to an increase in accidental or unintentional sign-ups by

---

[26] *Id.*

[27] GlobeNewsWire, *WW Announces Second Quarter 2020 Results with Record Digital Subscribers* (Aug. 4, 2020), *available at* https://www.globenewswire.com/news-release/2020/08/04/2072796/0/en/WW-Announces-Second-Quarter-2020-Results-with-Record-Digital-Subscribers.html (quoting WW President and CEO Mindy Grossman) (internal quotation marks omitted).

[28] *See* https://twitter.com/KikiSchirr/status/1254818066057347072 (Apr. 27, 2020).

consumers for paid WW Subscriptions plans, in effect increasing subscriber count and, thus, Defendant's overall revenues from renewal fees.

19.      Defendant's conduct has drawn the attention and ire of customers across the country, with countless angry customers taking to the Internet to voice their discontent over Defendant's broken promises.  For instance, numerous subscribers have expressed their frustrations directly to Defendant through Twitter, complaining of the unclear billing practices and confusing cancellation policy associated with the WW Subscriptions:



20.      Other WW Subscribers have left similarly scathing reviews on the Better

Business Bureau website:[29]

**Complaint Type:** Billing/Collection Issues    **Status:** Answered ⑦



07/07/2020

I signed up with WW in 2018 and paid for the 3 months. After the 3 months, I cancelled my membership. I recently did an audit on my bank account and I'm in absolute SHOCK the WW has been withdrawing money from my account on a monthly basis since the end of 2018. I should have been paying closer attention to my bank account, but I trusted WW completely because they have such a upstanding reputation. We are a military family with a child who has serious medical needs. This is flat out stealing from us!

**Complaint Type:** Problems with Product/Service    **Status:** Answered ⑦



07/15/2020

Did 3 months trial but it's a con. Spoke to people on chat after waiting 3 hours to get on - to the be told they won't cancel it and then stopped the chat - just ended it, really really rude, I have no job after COVID, thus no money, need to pay for bills and food for my 1 year old but they want to take it from me for a service I've never even used

**Complaint Type:** Billing/Collection Issues    **Status:** Resolved ⑦



07/16/2020

On June **, 2020, I cancelled my WW membership and received a confirmation email stating that my request was received and my account would be cancelled. However, today July **, 2020, my Credit Card is being billed again for another month! I immediately emailed WW and stated I cancelled my membership last month and for them to please remove the pending charge from my account immediately and to cancel my membership. I also told them do not bill me for any other amounts in the future. I received a response from Customer Service with an offer to give me two free months and was told they'd wait 24 hours for me to accept that offer, If they received no reply from me, then they would cancel at that time. I did reply to that email and reiterated what my requests for cancellation, removing that pending monthly sub fee from my credit card and to never bill me again. I just checked my credit card and the charge is still pending. I'm sorry but it shouldn't be this much of a hassle to do as I request.

**Complaint Type:** Billing/Collection Issues    **Status:** Answered ⑦



07/27/2020

I canceled my subscription last month and was charged 20.95 this month for a renewal. I cannot get in touch with anyone because "there is a higher than normal support volume". It has been 2 days and my account is now negative Because if this charge. It should never have gone through since I canceled my subscription.

---

[29] *See* https://www.bbb.org/us/ny/new-york/profile/weight-loss/ww-0121-21583/complaints#0.

**Complaint Type:** Advertising/Sales Issues   **Status:** Resolved ⑦



08/03/2020

I signed up for a 3 month free trial of WW. When I tried to cancel online I kept being taken to a screen to sign in and then I would sign in and the process would start again. I was not able to cancel online. Therefore, I called Weight Watchers and cancelled with a customer service rep. When I signed up there was nothing in the email received to try the service about a cancellation fee. When received their welcome email, there was nothing in the email that there was a cancellation or early termination fee. I cancelled the plan and was charged $64.95 which they are calling an early termination fee. The customer rep who placed the cancellation did not tell me there would be a cancellation fee. In fact I was one day after the first billing cycle and she said it was no problem to refund this. I then received a cancellation email notifying me of the fee. I have tried to contact them and been hung up/disconnected. This is not fair.

**Complaint Type:** Billing/Collection Issues   **Status:** Answered ⑦



09/21/2020

I canceled my membership online and the website said it has been processed, nothing else I need to do. They proceeded to charge me again anyway. I have tried to cancel it multiple times since then.

**Complaint Type:** Problems with Product/Service   **Status:** Answered ⑦



09/29/2020

I signed up for what I thought was 3 months of WW. I went to cancel only to discover a $40 early termination fee. That was NOT DISCLOSED ANYWHERE.

21.     Defendant acknowledges and responds to many of the consumer complaints left on the Better Business Bureau websites.  For instance, in one of its multiple responses to the above complaint dated 09/29/2020, Defendant explains that "the subscription plan authorized by the [author of the complaint] includes a Cancellation Fee if subscription is cancelled prior to end date" and "apologize[s] if this information may have been overlooked" but nevertheless states that "no refunds will be applied."[30]  Thus, Defendant cannot claim a lack of awareness of the fact that its unlawful conduct has caused financial injury to consumers.

22.     Yet more unhappy consumers left negative reviews regarding the WW

---

[30] *See id.*

Subscriptions at ConsumerAffairs.com:[31]





**Tami of Anchorage, AK**   ✓ Verified Reviewer

Original review: Jan. 2, 2020

Last year in the middle of a winter depression, I decided to take control over my weight. I registered to Weight Watchers. I quickly realized that it is not for me and left. I was not aware of the fact that I needed to cancel my membership. They have billed me monthly for a year. I had no clue. They don't send you email, receipts, and on the credit card it shows as WW international. I called them and they were rude, stating that I click a box that indicating the billing would be automatic. It is shaky and unethical. Most of people I know had found weight watchers too useless in their attempt to lose weight, anyway.





**Jeff of Macomb, MI**   ✓ Verified Reviewer

Original review: Jan. 2, 2020

Yet another company taking advantage of people with re-occurring charges. All I wanted was to try out the program for a couple of months. I prepaid for two months through my medical coverage. Then when I went to the WW I was required to create an online account. The process for creating an online account and downloading their app required me to give a credit card number so they could bill me for the third month (which I am not sure if I want at this time). Instead of them billing me if I wanted a third month, the burden is now mine to take action to prevent them from taking money out of my charge card. This has really irritated me and once my two months are up I am never coming back. They only care about their money and are not considerate to the people that are their customers. Give us a choice whether we want to be on a subscription or billed and pay monthly. I wish I could give zero stars.

Weight Watchers member **





**Theresa of Waterbury, CT**   ✓ Verified Reviewer

Original review: Jan. 8, 2020

Asked about cancelling membership. Told rep I was unaware that I was committed to 6 months. I thought it was a monthly plan I was on. She said in order for me to cancel they would charge me $39.99. I said I was going to review my plan and call my credit card to hold any more payments until I figure out what plan I actually signed up for.. I called my credit card company and they told me WW just tried to put a charge on my card for $39.99. I NEVER cancelled. She took it upon herself to charge my card before I had chance to review my membership. Very shady practice. I will never use or recommend ww to anyone.

---

[31] *See* https://www.consumeraffairs.com/nutrition/weight_watchers.html?page=2.



 **Enid of Madison, NJ**   ✓ Verified Reviewer

Original review: Jan. 9, 2020

I bought a three month package which is not three months - it is eternal 'til you suddenly discover they are charging you $19.95 a month. I used them for three months and thought I was over and done with it. The credit card statement does not say Weight Watchers, it says intl-digital. My husband is a programmer, so I assumed it was some subscription he had. Upon discovering, I called to cancel and asked for a refund. I was told I could cancel, but refund? Nope. It is in the fine print that they charge until I cancel despite purchasing only a three month trial. I am disgusted that this company, supposedly into healthcare is obviously more about ripping people off. Would NEVER recommend such a company to anyone!!



 **Cynthia of Marysville, CA**   ✓ Verified Reviewer

Original review: Jan. 16, 2020

I want to share my experience on WW. I signed up for 6months program and when my 6months came up the app stop working for me. So I thought my membership was canceled. But, surprise to me they continue charging me, app doesn't work but we will take your money. I called and the Supervisor argued with me and was worthless and lack customer service training. This makes me very sad because I did so well on the program and talked many friends into joining. But it's just a big rip-off scam, in the long run. I'm in retail and oversee over 25 stores and we would never treat anyone in this matter. I really don't need the $40 that I'm out but it's the principle of the matter. You want to believe that a company like WW is out to help people and would want them to return if needed. I would never ever recommend or even suggest this to anyone.



 **Paula of Oakmont, PA**   ✓ Verified Reviewer

Original review: Jan. 21, 2020

I joined in 2018. Didn't like the new plan at all and called to cancel. Was told I would be charged 260 dollars early cancellation fee. I was like, "what?!" They said I signed up for 6 months, which I know I never would have done in the first place! I saw no receipts that I did any such thing. Then he said it must have been the site I picked. Why the hell would I do that and there was no mention of a cancellation fee!! If I had seen it, I would never have joined to begin with! I called many times to rectify this to no avail. Though I quit the program, they continued to charge me 55 a month for the six month. So either way, they're gonna get their 260 one way or the other. I would never recommend them to anyone, ever!! Please don't respond with "I will have someone reach out to you." Save your **.



 **Kristine of Bolingbrook, IL**   ✓ Verified Reviewer

Original review: Feb. 3, 2020

Do Not Join!!! WW is awful!! They are fraudulent in their charges. I was told my membership was for 2 months and was charged $41.61. Then was charged the same amount 1 month later. Then called to cancel the membership the very same morning I was charged and was told they would waive the $64.95 cancellation fee and was charged that on top of the $41.61. Do Not get caught up in this fraudulent company!!!



 **Elizabeth of Key West, FL**   ✓ Verified Reviewer

Original review: April 20, 2020

I signed up with Weight Watchers. I could not cancel their service. They are very hard to get out of their program once you are in their clutches. You don't need to sign up. All the recepies you need are easily found online.



 **Faye D of Blackwood, NJ**   ✓ Verified Reviewer

Original review: April 29, 2020

It is literally impossible to CANCEL...IMPOSSIBLE! Their customer service contact is ridiculous, they make it hard. I cancelled, got a confirmation and they still continue to charge. I had to dispute it with PayPal. Let me say this, I've been on Weight Watchers several times in my life. The program itself is wonderful. But you would think I would learn my lesson not to trust them as far as cancelling memberships. I WILL NEVER SIGN UP FOR WEIGHT WATCHERS AGAIN!!!! I'm so disgusted!!!



 **N. C. of Baltimore, MD**   ✓ Verified Reviewer

Original review: May 5, 2020

I joined in Nov 2018. Didn't like the plan so I canceled online. After taking a deep dive into my credit card miscellaneous charges, I came to noticed that I have been billed $19.95 a month for 30 MONTHS... That's $600. I was like, "what?!" They said they could only refund me three months. The reason it didn't cancel is because I needed to call to cancel. Cancelling online doesn't count??? I logged into this app maybe the first few weeks and never again. Why would they not send me an email to tell me to call to cancel after I canceled online if they needed to hear my voice. They didn't need to hear my voice when I signed up online??? Watch yourself - they will take your money!

 **Tiffany of Irvine, CA**   ✓ Verified Reviewer

Original review: Aug. 31, 2020

I joined in May for the 3 month free trial but never used the service. I attempted call all August long but the hold time was always over 60 minutes and no one came to the line. I emailed customer service, canceled the automatic payment through PayPal. I then get a charge on the debit card that is linked to PayPal but was never given to Weight Watchers. It's impossible to talk to anyone for a refund so my bank credited me back the money and is changing my card number just in case.

23.     The above reviews are just a sampling of numerous negative reviews consumers have left about the WW Subscriptions regarding Defendant's missing, vague, and/or inconspicuous pre- and post-checkout disclosures and the confusing cancellation mechanism associated with the WW Subscriptions.  As detailed further below, the above complaints reveal a widespread pattern of uniform unlawful conduct by Defendant, underscoring the artifice devised and employed by Defendant to lure and deceive millions of consumers into enrolling, and remaining enrolled, in their paid WW Subscription programs.

## C.     California's Automatic Renewal Law

24.     In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*., with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  Cal. Bus. & Prof. Code § 17600 (statement of legislative intent).  More recently, in 2018, California's Senate Bill 313 amended Section 17602 of the ARL, adding new requirements meant to increase consumer protections for, among other things, orders that contain free trial and promotional pricing, and subscription agreements entered into online.

25.     The ARL makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1)  Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.  If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

(2)  Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

(3)  Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

26.    Section 17602(b) of the ARL further provides:

A business that makes an automatic renewal offer or continuous service offer shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

Cal. Bus. & Prof. Code § 17602(b).

27.    Additionally, following the 2018 amendment to the ARL, the updated law

requires e-commerce sellers, doing business in California, to allow online cancellation of auto-

renewing memberships or recurring purchases that were initiated online.  Specifically, Section

17602(c) provides:

[A] consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service *exclusively online*, which may include a termination email formatted and provided by the business that a consumer can send to the business without additional information.

Cal. Bus. & Prof. Code § 17602(c) (emphasis added).  The updated ARL also requires a seller

who provides an automatic offer that includes a free gift, trial, or promotional pricing to notify consumers about how to cancel the auto-renewal before they are charged.  Sellers must also explain the price to be charged when the promotion or free trial ends.  If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain consumer consent to the non-discounted price prior to billing.  *Id.*

28.     Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."  Cal. Bus. & Prof. Code § 17601(a).

29.     Section 17601(b) of the ARL defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures:  (1) That the subscription or purchasing agreement will continue until the consumer cancels.  (2) The description of the cancellation policy that applies to the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.  (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if any."  Cal. Bus. & Prof. Code § 17601(b).

30.     Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbol ls or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code § 17601(c).

31.     Finally, Section 17603 of the ARL provides that where a "business sends any

goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent[,]" the material sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business[.]"  Cal. Bus. & Prof. Code § 17603.

32.     As alleged below, Defendant's practices on the WW Website and App systematically violate Sections 17602(a)(l), 17602(a)(2), and 17602(a)(3) of the ARL.

### D.     Defendant's Business: The Subscription Enrollment Process

33.     At all relevant times, Defendant offered, via the WW Website and App, the WW Subscriptions for various products and services related to weight loss and maintenance, fitness, and mindset, such as the Weight Watchers comprehensive diet program.  Defendant offers these paid subscriptions on a recurring basis for monthly and/or yearly renewal terms, and all plans automatically renew at the end of the defined renewal term unless the subscriber cancels.  For example, customers that sign up for a *monthly* WW Subscription are, at the end of the initial one-month period, automatically renewed and typically charged the full amount for the next month, and every month thereafter if they do not cancel.[32]

34.     Consumers can sign up for one of Defendant's subscription plans through the WW Website, on either its mobile or desktop format, or Defendant's mobile application. Defendant provides monthly and/or yearly subscription plans for its "Digital," "Workshop," and Coaching" membership programs (the "WW Subscriptions").  Defendant offers each of the WW

---

[32] *See, e.g.*, https://www.weightwatchers.com/checkout/plan?bg=1732&pz=218.  Note that Defendant also offers the WW Subscriptions for 3-month and 6-month commitment plans.  These plans have monthly renewal terms but variable monthly rates.  To illustrate, after the first month of a "3-Month Commitment Plan," the subscriber's "account will automatically be charged the discounted monthly fee [on offer at the time of enrollment] until the completion of [his] 3-Month Commitment Plan.  Thereafter, [the subscriber] will be charged the standard monthly fee … until [he] cancel[s]."

Subscriptions for 1-month, 3-month, and 6-month commitment plans.  Commitment plans of more than one month still have monthly renewal terms, but variable renewal rates.  To illustrate, after the first month of a "3-Month Commitment Plan," the subscriber's "account will automatically be charged the discounted monthly fee [on offer at the time of enrollment] until the completion of [his] 3-Month Commitment Plan.  Thereafter, [the subscriber] will be charged the standard monthly fee … until [he] cancel[s]."[33]  Defendant's WW Subscriptions constitute automatic renewal and/or continuous service plans or arrangements for the purposes of Cal. Bus. & Prof. Code § 17601.

35.    To sign up for one of Defendant's WW Subscriptions, the consumer must first select a program.  From a single webpage, prospective subscribers can review and compare the features of – and find links to the individual enrollment webpages for – each of Defendant's subscription offerings, including the WW Subscriptions at issue.[34]

36.    The enrollment process for each YT Subscription is substantially the same, regardless of the medium used.  After selecting a subscription option, consumers are directed to subsequent webpages on the WW Website and/or App, where they are prompted to create a membership account and input their billing information.  After these steps, consumers are directed to another, final webpage (the "Checkout Page"), where prospective subscribers are invited to complete their purchases.  For the purposes of the ARL and this Complaint, the "relevant portion of the Checkout Page" refers to the text of that portion of the Checkout Page that appears "in visual proximity to the request for consent to the offer[,]" which in this case pertains to the text nearby the final blue button that customers must press in order to complete

---

[33] *Id.*

[34] *See* https://www.weightwatchers.com/us/plans/onlineplus.

the checkout process.

37.     By way of example, when a consumer signs up for a Digital WW Subscription under a 6-Month Commitment Plan, the "relevant portion of the Checkout Page" refers to the disclosures in the blocks of text above the "Submit" button (i.e., the "request for consent"):



38.     Regardless of how the consumer subscribes (via the WW Website on its mobile or desktop format, or through the WW App), and irrespective of which WW Subscription (whether Digital, Workshop, or Coaching) or which specific commitment plan (1-month, 3-month, or 6-month) the subscriber selects, Defendant fails to disclose or obtain consumers' affirmative consent to the full terms of its auto-renewal program before or after checkout.  Consequently, Defendant uniformly fails to obtain any form of consent from – or even provide effective notice to – its subscribers before charging consumers' Payment Methods on a recurring basis.

### E.     Defendant Violates California's Automatic Renewal Law

39.     At all relevant times, Defendant failed to comply with the ARL in three ways: (i) Defendant failed to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (ii) Defendant charged Plaintiff's and Class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (iii) Defendant failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).

### i.     Defendant Fails To Clearly And Conspicuously Present The WW Subscription Terms Before The Subscription Agreement Is Fulfilled And In Visual Proximity To The Request For Consent To The Offer.

40.     First, the relevant portion of the Checkout Page does not clearly and conspicuously present the complete "automatic renewal offer terms[,]" as defined by Cal. Bus. & Prof. Code §17601(b), in violation of Section 17602(a)(1) of the ARL.  Specifically, using the

pictured Checkout Page above as an example, although the relevant portion mentions that the consumer's "membership automatically renews … until [the consumer] cancel[s,]" this disclosure is not "clear and conspicuous" as because it is smaller than the text featured in and under the "Plan and membership," "Price Breakdown," "Payment," and "Billing address" headers above, which fill up at least 60% of the Checkout Page.  Additionally, the disclosure, which appears in a gray font color and without emphasis, is presented in the same size, color, and font as that of the surrounding block of text.  Moreover, the disclosure is placed alongside other, unrelated disclosures without distinction from the surrounding text of the same size in any manner that calls attention to the language.  The uniform gray font color and lack of distinction cause the disclosure to blend into the sea of surrounding gray text of the same size and font, featured within the same particular block of text above the "Submit" button.  At the same time, all the gray text of that block is less obvious or noticeable than the rest of the text on the Checkout Page, which is uniformly black and some of which is also in bold and draws the eye's attention much more readily than the gray text in question.  Compared to the gray text above the "Submit" button, the black (and in some places larger and/or bolded) text of the Checkout Page visually stands out, drawing attention away from the gray text at issue.  In other words, the disclosure was presented in such a way that it could be, and was, easily overlooked, and is therefore not "clear and conspicuous" as defined by Cal. Bus. & Prof. Code § 17601(c).  Given such inconspicuousness, Defendant fails to disclose "[t]hat the subscription or purchasing agreement will continue until the consumer cancels" in the manner required by statute.  Cal. Bus. & Prof.

41.     The relevant portion of the Checkout Page also fails to adequately disclose the recurring amount to be charged to the subscriber's Payment Method each billing period.  In the

case of the 6-month digital commitment plan shown in the screenshot above, for instance, the Checkout Page contains some relevant information regarding the renewal fees associated with the consumer's WW Subscription for the "first 3 months" of a 6-month commitment, but it nevertheless fails to comply with the ARL because this price information is placed in the block of text positioned near the top of the webpage under the "Price Breakdown" section, whereas the "Submit" button appears towards the bottom of the webpage.  In other words, the "Price Breakdown" disclosures do not satisfy the ARL because they are not "in visual proximity to the request for consent" to the automatic renewal offer.

42.     Moreover, even if the "Price Breakdown" disclosures shown in the screenshot above *were* presented on the relevant portion of the Checkout Page (they are not), they still fail to place the subscriber on notice of the amount that will be charged to his Payment Method each month.  For instance, although the "Price Breakdown" section shows a "Standard 3 Months Fee" of $62.85, Defendant also indicates in that section that the consumer gets the first three months "free" – in that Defendant would charge "$0" to the subscriber's Payment Method for the first three months under the 6-month commitment plan.  Indeed, the "Price Breakdown" portion of the Checkout Page concludes in bold that the total cost to the subscriber for the first three months of the subscription is "$0."  However, that is intentionally false and misleading.  It is clear that Defendant intens to mislead prospective consumers with unnecessarily complicated details, especially when the "Price Breakdown" portion of the Checkout Page is read in conjunction with the fine print buried in other pages of the WW Website.   That is, although the Checkout Page states that the "Price Breakdown" for the "First 3 Months Total" is "$0," another page of the WW Website explains that "Today's total" is "$0" but "[a]fter [the consumer's] first month, [his] account will automatically be charged the discounted fee of $13.11 monthly, until the completion

of [his] 6-month plan."[35]   A reasonable consumer would not understand a "First 3 Months Total" of "$0.00" to mean "$0 today, but "$13.11 next month."   Thus, a reasonable consumer be misled by Defendant's disclosures in the "Price Breakdown" section.

43.   Further, while the relevant portion of the Checkout Page in the screenshot of the Checkout Page for the 6-month commitment does contain some important price information in the block of text above the "Submit" button (i.e., "in visual proximity" to the request for consent, as the ARL requires), that text is insufficient to satisfy the ARL.   The text at issue states that the "membership automatically renews at the end of [the consumer's] initial payment plan and [the consumer] will be charged at the standard monthly fee (currently $20.95 plus tax … )[.]"   This disclosure only tells the subscriber "the amount to which the [recurring] charge will change" following the initial subscription period, but Defendant does *not* provide the consumer with information as to "[t]he recurring charges that will be charged to the [his Payment Method] as part of the automatic renewal plan or arrangement," see Cal. Bus. & Prof. Code § 17601(b)(3), in violation of Section § 17602(a)(1) of the ARL.

44.   Finally, Defendant fails to present a complete "description of the cancellation policy that applies to the offer."   Cal. Bus. & Prof. Code § 17601(b)(2).   With respect to cancellation, the relevant portion of the Checkout Page merely states: "You cancel at any time by visiting the Cancellation Policy," with the underlined portion included as a hyperlink that leads to another page of the WW Website containing the referenced "Cancellation Policy."   This reference to Defendant's "cancellation policy" set forth on other pages of the WW Website and/or App is not tantamount to disclosure of it.   Notably, the Checkout Page makes no other reference to "cancellation" in anyway.   For instance, the Checkout Page contains no explanation

---

[35] https://www.weightwatchers.com/checkout/plan?bg=1732&pz=218 (emphasis added).

of *how* to cancel, and nor does it provide any contact method that the consumer can use to reach out and affect cancellation, such as a toll-free phone number or an email address.  It is not enough that the cancellation policy is set forth on the hyperlinked page located elsewhere on the WW Website; the ARL requires that Defendant present its full cancellation policy on the Checkout Page – and it must further do so clearly, conspicuously, and with the requisite proximity – so as to allow the consumer to read and review immediately prior to purchase.  Thus, Defendant failed to place consumers on notice of its cancellation policy in accordance with statute because the ARL requires that companies provide such information "in visual proximity to the request for consent to the [automatic renewal] offer."  Cal. Bus. & Prof. Code § 17602(a)(1).  In other words, the required terms must appear on the Checkout Page, and more precisely they must appear in the block of text immediately above the "Purchase Subscription" button on that page.[36]  However, Defendant failed, and continues to fail, to satisfy that requirement.

> **ii.**   **Defendant Fails To Obtain Consumers' Affirmative Consent To The Automatic Renewal Terms Associated With The WW Subscriptions.**

45.    Second, although the Checkout Page contains a checkbox that consumers must click before they can click the "Submit" button and complete their purchase, the text beside the box states that "[b]y checking this box, [the consumer] acknowledge[s that he has] read and agree[s] to be bound by the terms ***above***[.]" (emphasis added).  The only terms that appear above that statement are those disclosures in the "Plan and membership," "Price Breakdown,"

---

[36] Similarly, the disclosure required by Cal. Civ. Code § 1694.7(b), discussed *infra* at ¶ 116, must appear "in close proximity to the space reserved for the signature of the buyer[.]"  In this case, the "signature of the buyer" refers to the "Submit" button on the Checkout Page.  Thus, Defendant must present the disclosure mandated by § 1694.7(b) "in close proximity" to the "Submit" button on the Checkout Page.  In other words, this disclosure, too, must appear in the block of text immediately above the "Purchase Subscription" button on the Checkout Page; that such disclosure may be set forth on the hyperlinked terms and conditions webpage of the WW Website or App is not sufficient to satisfy § 1694.7(b).

"Payment," and "Billing address" sections. To the extent that any automatic renewal terms are presented on the Checkout Page "in visual" proximity to the request for consent, those terms appear in the block of gray *below* the checkbox. After reading the checkbox statement, a reasonable consumer would believe that all material terms and any information of note would appear "above" the checkbox. Trusting in that, a reasonable consumer would perhaps briefly review the disclosures above the checkbox before skipping the rest of the text (which the checkbox statement seems to regard as unimportant), and clicking "Submit." For these reasons, Defendant did not obtain consumers' affirmative consent to any automatic renewal terms appearing below the checkbox by clicking it. Accordingly, when Defendant automatically renews customers' WW Subscriptions, Defendant charges consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2).

      **iii.**      **Defendant Fails To Provide A Post-Checkout Acknowledgment That Includes Clear And Conspicuous Disclosures Of The WW Subscription Offer Terms.**

      46.      Finally, after Plaintiff and the members of the Class subscribed to one of Defendant's WW Subscription plans, Defendant sent to Plaintiff and the Class email follow-ups regarding their purchases. The subject line of the email stated: "Here is your Weight Watchers receipt." The body of the email contained, in relevant part, the following text and images:

//

//

//

//

//

//

From  Weight Watchers <weightwatchers@email.weightwatchers com>
To  "leemorr23@yahoo.com" <leemorr23@yahoo com>
Sent  Wednesday, January 3, 2018, 01:49:45 PM PST
Subject  Here is your Weight Watchers receipt

**weightwatchers**

## Your Online*Plus* Receipt

| YOUR USER NAME: | REFERENCE NUMBER: | SUBSCRIPTION: |
|---|---|---|
| LEEMORR23 | 279426800 | 3 Months |

| PAYMENT METHOD: | ACCOUNT CHARGED: | SUBSCRIPTION DATE: |
|---|---|---|
| MasterCard | *********** ▇ | 1/3/2018 |

| NEXT BILLING FEE: | | |
|---|---|---|
| $19.95 | SUBTOTAL: | $44.85 |
| | TAX: | $0.00 |
| | AMOUNT CHARGED: | $44.85 |

BILLED TO:
Saugus, CA 91350

---

**Lose 10 Lbs on Us offer**
Lose at least 10 lbs within your first 2 months for applicable refund. Your subscription must be current at the time of processing to be eligible for refund. Full refund details and refund form available HERE.

Above is a summary of your first transaction. If you have any questions about this summary, please contact customer service.

If you've switched from one Weight Watchers plan to another, you'll receive a refund for your previous plan. Questions? Please see our refund policy.

Please note: your subscription will be automatically renewed at the end of your payment plan at the standard monthly rate (plus tax for New York) until you cancel. (Instructions on how to cancel are located in the Help section of the site.) You can review your membership details at any time by visiting your account status page.

CONNECT WITH US

Privacy Policy

You are subscribed as leemorr23@yahoo.com.

© 2018 Weight Watchers International, Inc. All rights reserved.

47.     The acknowledgment email contains even less of the required information than is featured on the relevant portion of the Checkout Page, discussed above.  Namely, the purchase confirmation does not provide:  that the WW Subscription "will continue until the consumer cancels[,]" Cal. Bus. & Prof. Code § 17602(b)(1); a "description of the cancellation policy that applies to the offer[,]" Cal. Bus. & Prof. Code § 17602(b)(2); or a statement of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change[, and,] if that is the case, and the amount to which the charge will change," Cal. Bus. & Prof. Code § 17602(b)(3).  As such, the acknowledgment fails to "include[] the automatic renewal offer terms … , cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer" in violation of Section 17602(a)(3) of the ARL.

48.     By and through these actions, Defendant has charged Plaintiff's and Class members' Payment Methods in direct violation of the ARL.  As a result, all goods, wares, merchandise, or products sent to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" pursuant to Cal. Bus. & Prof. Code § 17603.

## PLAINTIFF'S INDIVIDUAL ALLEGATIONS

49.     Plaintiff Lee Morrell is an individual consumer who purchased a three-month digital WW Subscription from Defendant's WW App while in California in or around January 2018.  Mr. Morrell signed up for his WW Subscription at the promotional or discounted flat rate of $44.85 for the first three months.  At the time of enrollment, Mr. Morrell provided his credit card information directly to Defendant.

50.     Before Mr. Morrell purchased his WW Subscription, Defendant did not disclose

to Mr. Morrell all required automatic renewal offer terms associated with the subscription program.  Additionally, although the Checkout Page from which Mr. Morrell made his purchase included some relevant information regarding the automatic renewal terms associated with his WW Subscription, the manner in which this information was presented was insufficient to put Mr. Morrell on notice.  Specifically, prior to completing his initial WW Subscription order, the relevant screens and buttons presented to Mr. Morrell did not clearly and conspicuously state that, following the initial three-month promotional period, his WW Subscription would automatically renew every month thereafter until he cancelled, and they did not describe the full cancellation policy that applied to his purchase.

51.     At no point prior to completing his initial purchase did Defendant obtain Mr. Morrell's affirmative consent to an agreement containing the automatic renewal offer terms.

52.     After Mr. Morrell completed his initial purchase, Defendant sent Mr. Morrell an Acknowledgment Email (pictured above) with the subject line "Here is your Weight Watchers receipt," confirming that Defendant had processed a charge of $44.85 to Mr. Morrell's credit card in exchange for Mr. Morrell's three-month WW Subscription.  The Acknowledgment Email failed to provide Mr. Morrell with or adequately place him on notice of several automatic renewal terms that applied to Defendant's offer, including the mere fact that the WW Subscription would automatically renew unless Mr. Morrell chose to cancel within the initial three-month promotional period and a description of Defendant's full cancellation policy.  The Acknowledgment Email further failed to provide Mr. Morrell with information regarding how to cancel his WW Subscription in a manner capable of being retained by him.  Mr. Morrell did not receive any other acknowledgements that contain the required information.

53.     As a result of Defendant's missing and otherwise deficient disclosures, when Mr.

Morrell selected and enrolled in his WW Subscription in or around January 2020, he was unaware that Defendant enrolled him in an "automatic renewal" program under which the subscription would renew each month unless Mr. Morrell chose to cancel.

54.     At some point during January 2018, shortly after Mr. Morrell enrolled in his WW Subscription, Mr. Morrell became ill with an auto-immune disorder, and could not use his arms or legs.  As a result of his illness, Mr. Morrell could no longer participate in Defendant's weight loss program (nor did he wish to do so), and he immediately discontinued use of the WW App and any and all other products and services associated with his WW Subscription.  However, because Mr. Morrell was not expecting the WW Subscription to automatically renew, the thought of cancelling his WW Subscription never occurred to Mr. Morrell.  Thus, believing the membership plan would automatically terminate following the initial three-month period and there was therefore no need for Mr. Morrell to affect cancellation in order to avoid future charges, Mr. Morrell never attempted to cancel his WW Subscription.

55.     Nevertheless, on April 4, 2018, three months after he first signed up for his WW Subscription, Defendant automatically renewed Mr. Morrell's WW Subscription and charged Mr. Morrell's Payment Method the full standard monthly rate associated with his WW Subscription.  Thereafter, Defendant continued to automatically renew Mr. Morrell's WW Subscription at the same rate on a monthly basis, charging his Payment Method an additional seventeen times after he first enrolled in January 2018, for a total of eighteen unauthorized charges to Mr. Morrell's Payment Method without his knowing consent.  As shown by the table below, from January 2018 to August 2019, Defendant charged a total of $384.00 to Mr. Morrell's Payment Method, including $339.15 in monthly renewal fees, which came as a surprise to Mr. Morrell:

| Billing Date | Amount |
|:---:|:---:|
| 01/04/2018 | $44.85 |
| 04/04/2018 | $19.95 |
| 05/04/2018 | $19.95 |
| 06/04/2018 | $19.95 |
| 07/04/2018 | $19.95 |
| 08/04/2018 | $19.95 |
| 09/04/2018 | $19.95 |
| 10/04/2018 | $19.95 |
| 11/05/2018 | $19.95 |
| 12/04/2018 | $19.95 |
| 01/04/2019 | $19.95 |
| 02/04/2019 | $19.95 |
| 03/04/2019 | $19.95 |
| 04/04/2019 | $19.95 |
| 05/04/2019 | $19.95 |
| 06/04/2019 | $19.95 |
| 07/04/2019 | $19.95 |
| 08/05/2019 | $19.95 |
| | **Total: $384.00** |

56.     Defendant continued to charge automatic renewal fees to Mr. Morrell's Payment Method on a monthly basis until Mr. Morrell lost and promptly deactivated the credit card associated with his WW Subscription in or around September 2019.  Mr. Morrell did not learn of the above renewal charges until September 3, 2019, when he received an email from Defendant with the subject line "Payment Authorization Failed."  As shown below, Defendant's September 3 email notified Mr. Morrell that Defendant was "having trouble processing [Mr. Morrell's] payment[,] … likely due to outdated or inaccurate payment account information."  This was the

first correspondence Mr. Morrell had received of any kind from Defendant regarding his WW

Subscription since he first enrolled in it and received Defendant's non-compliant

Acknowledgment Email on January 3, 2018.



57.    Mr. Morrell's confusion and surprise with respect to the monthly renewal fees he

incurred from April 2018 to August 2019 is the direct result of Defendant's failure to place Mr.

Morrell on notice of several material terms associated with his WW Subscription.  In particular,

Mr. Morrell was not made aware of the fact that Defendant enrolled him in an "automatic

renewal" program under which his WW Subscription would automatically renew each month after the initial three-month period, unless Mr. Morrell chose to cancel.  Nor was Mr. Morrell made aware of Defendant's cancellation policy, the most crucial aspects of which were missing from the Checkout Page and Acknowledgment Email.  Because Defendant failed to disclose this material information in the manner required by statute, Mr. Morrell was unable at the point of sale to accept Defendant's offer or knowingly enter into to the purchase agreement.  Thus, as a direct result of Defendant's missing, incomplete, and otherwise deficient disclosures on the Checkout Page and in the Acknowledgment Email, Mr. Morrell was induced to sign up for, and unable to terminate, his WW Subscription.

58.    Notably, neither the Checkout Page nor the Acknowledgment Email contain Defendant's full cancellation policy or any explanation whatsoever regarding how to cancel the WW Subscription.  As a result, based on the pre- and post-check out disclosures featured on the Checkout Page and in the Acknowledgment Email, Mr. Morrell did not know anything about how to cancel his WW Subscription (e.g., in terms of who to contact, when, and by what method), or about Defendant's refund policy with respect to cancellations outside the three-month commitment period or for health reasons, as may be set forth on other pages of Defendant's website.

59.    Mr. Morrell was not previously aware of the above aspects of Defendant's cancellation policy.  At no point during his WW Subscription was Mr. Morrell required or even prompted to navigate to or otherwise examine any of the terms disclosed on the on any other page of the WW Website or App, aside from the Checkout Page.  Defendant neglected to disclose this information to Mr. Morrell either at the point of purchase on the Checkout Page or in the acknowledgment email that Defendant sent to Mr. Morrell after he completed the checkout

process.  Accordingly, Defendant failed to place Mr. Morrell on notice of its cancellation policy or provide Mr. Morrell information regarding how to cancel in a manner that is capable of being retained by him, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3).

60.     Moreover, even if the acknowledgment email *had* contained Defendant's complete cancellation policy (it did not), the "mechanism for cancellation" that exists is not one Mr. Morrell and other reasonable consumers would consider "easy-to-use."  Defendant therefore failed to provide Mr. Morrell with an "easy-to-use mechanism for cancellation" or describe any such mechanism in an acknowledgment email, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3) and 17602(b).

61.     Defendant's pre- and post-checkout disclosures fail to comply with the ARL, which deems products provided in violation of the statute to be unconditional gifts to consumers. Cal. Bus. & Prof. Code § 17603.

62.     As a direct result of Defendant's unlawful conduct described above, Mr. Morrell suffered economic injury.  Specifically, Defendant's ARL violations caused Mr. Morrell's financial injury because Mr. Morrell reasonably relied on Defendant's conspicuous disclosures of the Checkout Page and the Acknowledgment Email (and, as a natural corollary, the omissions and/or the inconspicuousness of the disclosures contained therein) in deciding whether to purchase his WW Subscription in the first place and to continue paying for it after that (i.e., by not cancelling the auto-renewal).  Had Defendant complied with the ARL by adequately disclosing – and obtaining Mr. Morrell's affirmative consent to – the requisite WW Subscription terms on the Checkout Page at the point of Mr. Morrell's initial purchase in January of 2018, Mr. Morrell would have been able to read and review the auto renewal terms prior to purchase and he would have not subscribed to Weight Watchers, thereby avoiding financial injury of any kind as

a result of Defendant's ARL violations.  Similarly, had Defendant complied with the ARL by adequately disclosing the terms associated with his WW Subscription in the post-checkout acknowledgment email (i.e., after initial enrollment but before any one of the seventeen times Defendant subsequently automatically renewed Mr. Morrell's WW Subscription and charged his Payment Method accordingly), Mr. Morrell would have been able to read and review the auto renewal terms prior to another automatic renewal, and he would have cancelled his WW Subscription prior to the expiration of the subscription period in which he learned such information, thereby avoiding all or part of the $339.15 in automatic renewal charges Mr. Morrell incurred from April 2018 to August 2019.  But Defendant did not adequately disclose the required automatic renewal terms in either the Checkout Page or the acknowledgment email, depriving Mr. Morrell of the opportunity to make an informed decision as to the transaction.

63.     The facts giving rise to Mr. Morrell's claims are materially the same as the Class he seeks to represent.

## CLASS ACTION ALLEGATIONS

64.     **Class Definition**: Plaintiff brings this action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All persons in California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, incurred renewal fee(s) in connection with Defendant's WW Subscription offerings.

65.     Specifically excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

66.     Plaintiff reserves the right to amend the definitions of this Class if discovery or

further investigation reveals that the Class should be expanded or otherwise modified.

67.     ***Numerosity.***  Members of the Class are so numerous that their individual joinder

herein is impracticable.  On information and belief, the Class comprises at least thousands of

consumers throughout California.  The precise number of Class members and their identities are

unknown to Plaintiff at this time but may be determined through discovery.  Class members may

be notified of the pendency of this action by mail and/or publication through the distribution

records of Defendant.

68.     ***Commonality and Predominance***.  Common questions of law and fact exist as to

all Class members and predominate over questions affecting only individual Class members.

Common legal and factual questions include, but are not limited to:  (a) whether Defendant's

WW Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof.

Code § 17601(a); (b) whether Defendant failed to present the automatic renewal offer terms, or

continuous service offer terms, in a clear and conspicuous manner before the subscription or

purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer,

in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (c) whether Defendant charged Plaintiff's

and Class members' Payment Method for an automatic renewal service without first obtaining

their affirmative consent to the automatic renewal offer terms in violation of Cal. Bus. & Prof.

Code§ 17602(a)(2); (d) whether Defendant failed to provide an acknowledgement that included

the automatic renewal or continuous service offer terms, cancellation policy, and information on

how to cancel in a manner that is capable of being retained by Plaintiff and the Class, in violation

of Cal. Bus. & Prof. Code § 17602(a)(3); (e) whether the goods and services provided by

Defendant are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code §

17603; (f) whether Defendant's conduct alleged herein violated California's False Advertising

Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, California's Consumers Legal

Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and/or California's Unfair

Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (g) whether Defendant's

conduct alleged herein constitutes conversion and/or unjust enrichment; (h) whether Plaintiff and

the Class are entitled to damages and/or restitution; (i) whether Defendant should be enjoined

from further engaging in the misconduct alleged herein; and (j) whether Plaintiff and the Class

are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

69.     ***Typicality.***  The claims of Plaintiff Morrell are typical of the claims of the Class in

that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful

conduct, based upon Defendant's failure to obtain Plaintiff's and the Class's affirmative consent

to the automatic renewal offer terms or continuous service offer terms associated with the WW

Subscriptions before charging their Payment Methods.

70.     ***Adequacy***.  Plaintiff will fairly and adequately protect Class members' interests.

Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained

counsel that have considerable experience and success in prosecuting complex class-actions and

consumer protection cases.

71.     ***Superiority***.  A class action is superior to all other available methods for the fair

and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions

of individual actions are economically impractical for members of the Class; the Class is readily

definable; prosecution as a class action avoids repetitious litigation and duplicative litigation

costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a

class action permits claims to be handled in an orderly and expeditious manner.

72.     Defendant has acted or failed to act on grounds generally applicable to the Class,

thereby making appropriate final injunctive relief with respect to the Class as a whole.

73.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and the Class and will likely retain the benefits of its wrongdoing.

74.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

<u>**COUNT I**</u>
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

75.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

76.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

77.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

78.     As alleged below, Defendant has committed unlawful and/or unfair business practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiff and the Class.

41

79.     Additionally, at all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unlawful and/or unfair conduct as a result of its violations of the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.*  Specifically, Defendant failed, and continues to fail, to: (a) provide the auto-renewal terms associated with its WW Subscription "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer[,]" in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain the affirmative consent of Plaintiff and the Class to those terms before charging their Payment Method, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).  Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their WW Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

80.     Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

81.     All products received from Defendant in violation of the ARL, Cal. Bus. Prof. Code §§ 17602, *et seq.*, constitute "unconditional gifts."  *See* Cal. Bus. Prof. Code § 17603.  As a direct and proximate result of Defendant's unlawful and/or unfair practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiff and the Class in the form of payments made by Plaintiff and the Class for their WW Subscriptions.  Defendant has profited from its unlawful and/or unfair acts and practices in the amount of those business expenses and interest accrued thereon.

82.     Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

83.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

84.     Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

85.     Plaintiff and the members of the Class have suffered a substantial injury in fact and lost money by virtue Defendant's acts of unfair competition, which caused them to purchase the WW Subscriptions.  Had Defendant complied with its disclosure obligations under the ARL, Plaintiff and members of the Class would not have purchased their WW Subscriptions or would have cancelled their WW Subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees.  Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

86.     Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct.  The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices associated with the WW Subscriptions are still used by Defendant today.

87.     Plaintiff and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiff's and the Class's

Payment Method in connection with their WW Subscriptions during the four years preceding the filing of this Complaint. Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and the Class, from whom they were unlawfully taken.

88.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and members of the Class seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant.

89.     Plaintiff Morrell brings this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

<u>**COUNT II**</u>
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

90.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

91.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

92.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

93.     Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California and the general public concerning Defendant's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading.  Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

94.     Defendant's statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendant's WW Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments.  Such representations and omissions on the Checkout Page constitute false and deceptive advertisements.

95.     Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

96.     Plaintiff and the members of the Class were deceived by Defendant's statements and omissions made online when they signed up and started paying for their WW Subscriptions, and there is a strong probability that other California consumers and members of the public were also or are likely to be deceived as well.  Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions.  Plaintiff and other members of the Class did not learn of Defendant's cancellation and automatic payment policies until after they had already signed up and started paying for Defendant's WW Subscription. They relied on Defendant's material misrepresentations and omissions to their detriment.

97.    Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because they would not have purchased the WW Subscriptions on the same terms if the true facts were known about the product and the WW Subscriptions do not have the characteristics as promised by Defendant.

98.    Plaintiff Morrell, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

## COUNT III
### Violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.

99.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

100.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

101.    Plaintiff and the members of the Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

102.    Defendant's selection and/or subscription offers and the products pertaining thereto are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b). The purchases by Plaintiff and the Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

103.    The acts and practices of Defendant as described above were intended to deceive

46

Plaintiff and the Class as described herein, and have resulted, and will result, in damages to Plaintiff and the Class.  These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions deceiving that the WW Subscriptions have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

104.    Plaintiff and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were induced to purchase WW Subscriptions and/or pay renewal fees they would not have otherwise purchased and/or paid.  Had Defendant fully and clearly disclosed the terms associated with the WW Subscriptions, Plaintiff and the Class would have not subscribed to Weight Watchers or they would have cancelled their WW Subscriptions earlier, *i.e.*, prior to the expiration of the renewal term.

105.    Plaintiff, on behalf of herself and all other members the Class, seeks an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

106.    In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on August 18, 2020, informing Defendant of his intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return request, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  A true and correct copy of the letter is attached hereto as **Exhibit A**.  Accordingly, Plaintiff Morrell, individually and on behalf of the proposed Class, seeks damages from

Defendant as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

**COUNT IV**
**Unjust Enrichment / Restitution**

107.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

108.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

109.    Plaintiff and the Class conferred benefits on Defendant by purchasing the WW Subscriptions.

110.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and the Class's purchases of the WW Subscriptions.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant's failure to disclose material terms of the purchase agreement, in violation of California law, induced Plaintiff and the Class to purchase the WW Subscriptions.  These omissions caused injuries to Plaintiff and the Class because they would not have purchased the WW Subscriptions at all, or on the same terms, if the true facts were known.

111.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class for its unjust enrichment, as ordered by the Court.

**COUNT V**
**Violation of California Civil Code §§ 1694.5**

112.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

113.    Plaintiff brings this claim individually and on behalf of the members of the

proposed Class against Defendant.

114.    Plaintiff entered into a 3-month installment contract for a WW Subscription on January 3, 2018. Plaintiff's WW Subscription with Defendant is a "weight loss contract" as used in Cal. Civ. Code § 1694.5 because it is a membership to a weight loss program, formed for the purposes of providing instruction, counseling, supervision, or assistance in weight reduction, body shaping, diet, and/or eating habits.

115.    Defendant violated Cal. Civ. Code § 1694.7(b) because the contracts entered into by Plaintiff and the Class did not contain, on their face and in close proximity to the space reserved for the signature of the buyer (*i.e.*, in close proximity to the "Submit" button on the Checkout Page), a conspicuous statement in a size equal to at least 10-point boldface type, as follows: "You, the buyer, may cancel this agreement, without any penalty or obligation, at any time prior to midnight of the original contract seller's third business day following the date of this contract, excluding Sundays and holidays. To cancel this agreement, mail or deliver a signed and dated notice, or send a telegram which states that you, the buyer, are canceling this agreement," or words of similar effect.

116.    Plaintiff was not made aware, at the point of purchase or any time during his WW Subscription thereafter, of his right to cancel his WW Subscription "without any penalty or obligation, at any time prior to midnight of the original contract seller's third business day following the date of [] contract [formation]" or of how to go about invoking that right.  At no point during his WW Subscription was Mr. Morrell required or even prompted to navigate to or otherwise examine any of the terms disclosed on the on any other page of the WW Website or App, aside from the Checkout Page.  Defendant neglected to disclose this information to Plaintiff either at the point of purchase on the Checkout Page.

117.    As a direct result of Defendant's unlawful conduct described above, Plaintiff

suffered economic injury.  Had the Checkout Page complied with Cal. Civ. Code § 1694.7 by

adequately presenting the requisite disclosure on the Checkout Page at the point of Plaintiff's

initial purchase in January of 2018, Plaintiff would have been able to read and review the term

concerning his right to cancel – which would have alerted Plaintiff of the need to cancel his WW

Subscription in the first place in order to stop receiving automatic renewal charges each month –

and Plaintiff would not have subscribed to Weight Watchers or he would have cancelled his WW

Subscription before the expiration of the three-day grace period set forth by Cal. Civ. Code §

1694.7(b), thereby avoiding financial injury of any kind as a result of Defendant's unlawful

conduct.  However, Defendant did not disclose the required information – fully, clearly,

conspicuously, or at all – on the relevant portion of the Checkout Page as required by Cal. Civ.

Code § 1694.7(b), thereby depriving Plaintiff of the opportunity to make an informed decision as

to the transaction.

118.    Defendant's violation of Cal. Civ. Code § 1694.7(b) renders the contracts entered

into by Plaintiff and the Class void and unenforceable such that they may be cancelled at any

time.  Cal. Civ. Code § 1694.7(e); Cal. Civ. Code. § 1694.9(a); Cal. Civ. Code § 1694.9(d).

119.    Further, Defendant's unlawful conduct was willful and/or fraudulent in that it

knew or should have known that its Checkout Page feature misleading statements and outright

omissions of material information mandated by both Cal. Civ. Code § 1694.7(b) and the ARL,

Cal. Bus & Prof. Code §§ 17601, *et seq*., that such misrepresentations and/or omissions would

and in fact did fraudulently induce subscribers, including Plaintiff and the Class, to enter into the

weight loss contract under their WW Subscriptions.  As such, Defendant's willful and/or

fraudulent conduct provides an independent basis for finding that Defendant's contracts with

Plaintiff and the Class are void and unenforceable such that they may be cancelled at any time. Cal. Civ. Code § 1694.9(b).

120. As a result, Plaintiff and the Class seek recovery of actual damages including all membership or installment fees paid by Plaintiff and the Class under their void and unenforceable contracts with Defendant, the trebling thereof, and reasonable attorneys' fees. Cal. Civ. Code § 1694.9(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.


Dated:  November 24, 2020                      Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Philip L. Fraietta*

Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email:  ndeckant@bursor.com
        fklorczyk@bursor.com

*Attorneys for Plaintiff*

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Philip L. Fraietta, declare as follows:

1.      I am an attorney at law licensed to practice in the State of New York and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Southern District of New York.

I declare under the penalty of perjury under the laws of the State of New York and the United States that the foregoing is true and correct and that this declaration was executed at Yorktown Heights, New York this 24th day of November, 2020.

                                            */s/ Philip L. Fraietta*
                                            Philip L. Fraietta

53

# EXHIBIT A

# BURSOR & FISHER

P.A.

1990 N. CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

FREDERICK J. KLORCZYK III
Tel: 925.300.4455
Fax: 925.407.2700
fklorczyk@bursor.com

August 18, 2020

### *Via Certified Mail – Return Receipt Requested*

WW International, Inc.
675 Avenue of the Americas, 6th Floor
New York, NY 10010

The Prentice-Hall Corporation System, Inc.
80 State Street
Albany, New York, 12207

*Re:    Notice And Demand Letter Pursuant To California Civil Code §§ 1750, et seq.; U.C.C.
        §§ 2-313, 2-314, 2-607; and all other relevant state and local laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by WW International, Inc. ("Weight Watchers" or "WW"), pursuant to the California Consumers Legal Remedies Act ("CLRA"), Civil Code § 1782(a), on behalf of our client, Lee Morrell, and a class of all similarly situated persons in the State of California who were charged renewal fees in connection with WW's subscription offerings (the "Class").  This letter also serves as notice of violations U.C.C. §§ 2-313, 2-314, 2-607, as well as notice of breaches of contract and all other applicable state or federal law cause of action requiring pre-suit notice.

Mr. Morrell alleges that WW has engaged in an illegal automatic renewal scheme with respect to its fitness and weight loss subscription plans (the "WW Subscriptions").  On the final page of the WW website or mobile application where prospective subscribers are invited to complete their purchase (the "Checkout Page") and in the confirmation email WW subsequently sent to consumers after completing the checkout process (the "Acknowledgment Email"), WW intentionally made and disseminated statements concerning the WW Subscription to consumers in California and the general public, including our client and the Class, which are untrue and misleading on their face and by omission.  WW's untrue and misleading statements include but are not limited to representations and omissions regarding the terms of payment for and cancellation of a consumer's automatic payments.  These representations and omissions constitute false and deceptive advertisements.

The acts and practices of WW as described herein violated, and continue to violate, the CLRA in at least the following respects:

a.      in violation of Section 1770(a)(5), WW has represented that the WW Subscriptions have characteristics and benefits they do not have; and

b.      in violation of Section 1770(a)(9), WW has advertised the WW Subscriptions with an intent not to sell them as advertised.

On behalf of our client and the Class, we hereby demand that WW immediately take the following corrective action: (1) cease, and desist from engaging in, the foregoing violations of the CLRA by fully and clearly disclosing any of the terms associated with the WW Subscriptions (the "Terms") to consumers on the Checkout Page and in the Acknowledgment Email in the manner required by statute; and (2) make full restitution to all California subscribers to the WW Subscriptions of all purchase and renewal money obtained from sales thereof.

We also demand that WW preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.  All documents that disclose any information listed below concerning renewal fees charged by WW with respect to the WW Subscriptions:

    a.  Net revenues generated from renewal fees;

    b.  The total number of people in California who paid renewal fees; and

    c.  The average amount of renewal fees paid.

2.  All reports, memoranda, summaries, excel sheets, databases or similar documents that track aggregate information regarding renewal fees paid by California purchasers of a WW Subscription.

3.  All documents concerning the advertisement and marketing of the WW Subscriptions.

4.  All documents and communications that discuss disclosure of the Terms by WW on the WW website or mobile application:

    a.  Documents and communications discussing how the Terms should be disclosed;

    b.  Documents and communications discussing whether consumers see and understand disclosures about the Terms;

    c.  Documents and communications discussing whether to display the Terms more prominently, or less prominently; and

    d.  Documents and communications discussing any actual or potential changes to how the Terms are disclosed.

5.  Exemplar screenshots showing what information was shown to consumers when they purchased WW Subscriptions from the WW website or mobile application.

6.  All consumer surveys, research, or memoranda discussing the Terms or the disclosure of the Terms generally, and any email attaching or discussing such surveys, research or memoranda.

7.  All documents and communications concerning WW's decision to exclude any of the Terms from the Checkout Page of the WW website or mobile application.

8.  All documents, communications, consumer surveys, research, or memoranda discussing how to retain customers or prevent churn through the adoption of policies or practices related to cancellation and/or billing.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

This letter also serves as a thirty (30) day notice and demand requirement under Cal. Civ. Code § 1782 for damages.  Accordingly, should you fail to rectify the situation on a class-wide basis within 30 days of receipt of this letter, we will seek actual damages, plus punitive damages, interest, attorneys' fees and costs.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Sincerely,

Frederick J. Klorczyk III