UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

LEE MORRELL, individually and on behalf
of all similarly situated,

                Plaintiff,

      -against-

WW INTERNATIONAL, INC.,

              Defendant.

------------------------------------------------------ X

:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.  1:20-cv-09912 (JGK)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

MORGAN, LEWIS & BOCKIUS LLP

Collie F. James, IV (*pro hac vice*)
600 Anton Blvd., Suite 1800
Costa Mesa, CA 92626
T: +1.714.830.0600
F: +1.714.830.0700

Jonathan H. Levy
101 Park Avenue
New York, NY 10178
T: +1.212.309.6000
F: +1.212.309.6001

*Attorneys for Defendant*
*WW International, Inc.*

## Table of Contents

PRELIMINARY STATEMENT ...................................................................................................... 1

STATEMENT OF FACTS AND RELEVANT BACKGROUND ................................................ 1

SUMMARY OF PLAINTIFF'S ALLEGATIONS AND CLAIMS............................................. 5

LEGAL STANDARD.................................................................................................................... 5

ARGUMENT ................................................................................................................................. 6

I.        Plaintiff's allegations show that WW complied with the ARL............................................ 6

   A.      WW clearly and conspicuously presented the "automatic renewal offer terms.".............. 7

      1.      The "automatic renewal offer terms" were presented on the checkout page. .............. 8

      2.      The required terms were displayed "in a clear and conspicuous manner."................ 11

      3.      The required terms were "in visual proximity to the request for consent."................ 12

   B.      WW received Plaintiff's affirmative consent to the "automatic renewal offer terms." . 13

   C.      WW achieved full compliance with the acknowledgement requirement...................... 13

   D.      WW provided an easy-to-use cancellation method......................................................... 15

   E.      WW qualifies for good faith safe harbor....................................................................... 15

II.       Plaintiff fails to state a claim under the UCL, FAL, CLRA, or for unjust enrichment...... 16

III.      Plaintiff lacks standing under the UCL, FAL, and CLRA because he cannot allege injury-in-fact. ......................................................................................................................................... 17

IV.       Plaintiff fails to state a claim under § 1694.7(b)............................................................... 17

CONCLUSION............................................................................................................................ 19

## Table of Authorities

CASES                                                                                    Page(s)

Adelson v. Harris,

  973 F. Supp. 2d 467 (S.D.N.Y. 2013) ........................................................16

Aschroft v. Iqbal,

  556 U.S. 662 (2009) ...................................................................................5

Bass v. Facebook, Inc.,

  394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...................................................17

Broidy Capital Mgmt. LLC v. Benomar,

  944 F.3d 436 (2d Cir. 2019) ......................................................................6

Lopez v.  Stages of Beauty, LLC,

  307 F.Supp.3d 1058 (S.D. Cal. 2018) ......................................................9

McKean v. ABC Fin. Servs., Inc.,

  2019 WL 5684403 (S.D. Cal. Nov 1, 2019) .............................................18

Nationwide Biweekly Admin. Inc. v. Sup. Ct. of Alameda Cty.,

  9 Cal. 5th 279 (Cal. Sup. Court 2020) .............................................. 16 fn. 6

Roberts v. Weight Watchers Int'l, Inc.,

  217 F. Supp.3d 742 (S.D.N.Y. 2016) ........................................................5

Seidemann v. Prof'l Staff Cong. Local 2334,

  432 F. Supp. 3d 367 (S.D.N.Y. 2020) ......................................................16

Wang v. Palmisano,

  51 F. Supp. 3d 521 (S.D.N.Y. 2014) .............................................6, 7, 11, 14

Wholean v. CSEA SEIU Local 2001,

  955 F.3d 332 (2d Cir. 2020) .....................................................................15

**STATUTES**

Cal. Bus. & Prof. Code § 17200 *et seq.* ................................................................5, 17

Cal. Bus. & Prof. Code § 17204 ..........................................................................17

Cal. Bus. & Prof. Code § 17600 *et seq.* ..................................................................5

Cal. Bus. & Prof. Code § 17601 ...................................................................... passim

Cal. Bus. & Prof. Code § 17602 ...................................................................... passim

Cal. Bus. & Prof. Code § 17604 ...................................................................6, 7, 15

Cal. Civ. Code §§ 1694.5, 1694.7, 1694.9 .........................................................5, 18

WW International, Inc. ("WW") respectfully submits this memorandum of law in support of its motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

In this action, Plaintiff Lee Morrell ("Plaintiff") asks this Court to create burdens under California law that simply do not exist and to use those new burdens to redress harms that did not occur. But for Plaintiff's unfounded and unsupportable extra-legal burdens, the Complaint confirms that WW is in full compliance with California law. The California Automatic Renewal Law (CAL. BUS. & PROF. CODE §17600 *et. seq.*) (the "ARL") provides that, in order to offer automatically renewing subscriptions, companies must disclose certain categories of information. Understanding, however, that such prescription does not require any "magic words" and is open to interpretation, and to encourage compliance, the California Legislature wisely balanced subscribers' and companies' concerns by eliminating liability for those companies, such as WW, that attempt to comply with the law in good faith. The Complaint, by its own terms, plainly establishes that WW strictly complied with the ARL; if there is any technical deficiency, the record as alleged by Plaintiff establishes a clear attempt to comply in good faith and that WW easily qualifies for the ARL good faith safe harbor. Plaintiff now comes to the Court insisting that it enforce the ARL in a manner prohibited by its very terms. The Court should therefore deny Plaintiff's demand and dismiss the Complaint with prejudice.

## STATEMENT OF FACTS AND RELEVANT BACKGROUND[1]

WW is a global wellness company that offers subscription-based member services. See Compl. ¶ 11. Such subscriptions provide access to WW's website and mobile app, where

---

[1] Plaintiff's Complaint is cited herein as "Complaint ¶ __" or "Compl. ¶ __." Facts alleged herein are taken as true solely for purposes of this motion to dismiss.

1

customers can view resources and track progress.  Id.  In general, WW offers subscriptions that begin with an initial promotional period and renew on a monthly basis.  See Compl. ¶ 1 (linking to http://weightwatchers.com).  For each subscription, clients choose among several options for the initial period, provide payment information, and agree to be charged for the initial period and for the monthly renewals until the client decides to cancel.  See Compl. ¶ 33.

Plaintiff allegedly purchased a 3-month subscription on January 3, 2018, for the promotional rate of $44.85 for the first 3 months and $19.95 (plus New York sales tax) per month thereafter.  Compl. ¶¶ 46, 49.  The Complaint shows that WW explicitly identified its automatic renewal and cancellation policies prior to Plaintiff submitting his credit card information for payment, that Plaintiff had an opportunity to review them before completing the sign-up process, and that WW identified them again post-payment.  See Compl. ¶¶ 37, 53, 62. Plaintiff now alleges that, despite being able to clearly identify them in the Complaint, he was unaware of those policies at the time he signed up for WW and that had he been aware, he would have cancelled his subscription or not purchased it in the first place.  See Compl. ¶¶ 37, 53, 62. Despite attaching the records of his monthly WW charges to the Complaint, Plaintiff further alleges that he did not notice the monthly charges for more than eighteen months until he discovered his mistake in September 2019.  Compl. ¶ 56.

Plaintiff affirmatively acknowledged certain disclosures on the checkout page prior to purchasing his subscription.  According to Plaintiff's own allegations, before WW charged Plaintiff's credit card, Plaintiff had to check a box that reads:

> **Required:** By checking this box, you acknowledge that you have read and agree to be bound by the terms above, including the Membership Agreement.

Compl. ¶ 37.[2]  After the check box, and before agreeing to "Submit" the order for payment, Plaintiff had to scroll past the following disclosures:

> **PLEASE NOTE:** Early termination fee will be applied in the event of cancellation prior to completion of full term.
>
> **Automatic Renewal and Cancellation:**  You agree that your membership automatically renews at the end of your initial payment plan and you will be charged at the standard monthly fee (currently $20.95 plus tax where **state and local sales tax apply**)[3] until you cancel.  You can cancel at any time by visiting the **Cancellation Policy**.
>
> **Terms and Conditions:**  You understand that your membership is governed by the **Membership Agreement**.  You acknowledge our **Privacy Policy** and **Notice of Privacy Practices**.

Id.  As shown in the Complaint, these disclosures occupy a substantial portion of the checkout page, and the rest of the page includes only: a description of the selected membership plan and its price breakdown, the customer's credit card number, and the customer's billing address.  Id.

According to the Complaint, after clicking the "Submit" button, Plaintiff received an email acknowledging the subscription (the "OnlinePlus Receipt" or "Acknowledgement Email"). Compl. ¶ 46.  Plaintiff allegedly received such Acknowledgement Email dated January 3, 2018, from WW, which stated that he had signed up for a 3-month subscription beginning January 3,

---

[2] Unless otherwise indicated herein, all emphasis is in original, and internal marks and citations are omitted.

[3] The image Plaintiff provides at Complaint ¶ 37 states that the current standard monthly rate is $20.95 plus tax, but at the time Plaintiff subscribed to WW's services, the rate was $19.95 plus tax.  Compl. ¶ 46.  To the extent this is a discrepancy, it need not be resolved to decide this motion.

2018.  Id.  It went on to state that the "AMOUNT CHARGED" was $44.85, and the "NEXT

BILLING FEE" would be $19.95.  Id.  Critically, the email further stated:

> Above is a summary of your first transaction.  If you have any
> questions about this summary, please contact customer service.
>
> If you've switched from one Weight Watchers plan to another,
> you'll receive a refund for your previous plan.  Questions?  Please
> see our refund policy.
>
> Please note: your subscription will be automatically renewed at the
> end of your payment plan at the standard monthly rate (plus tax for
> New York) until you cancel.  (Instructions on how to cancel are
> located in the Help section of the site.)  You can review your
> membership details at any time by visiting your account status
> page.

Id.  Plaintiff alleges that "[a]t some point in January 2018," after subscribing to WW, he

"became ill with an auto-immune disorder," causing him to lose the use of his arms and legs.

Compl. ¶ 54.  He allegedly stopped using WW's app and services but, despite the multiple

previous notifications regarding membership cancellations, "the thought of cancelling his WW

Subscription never occurred to Mr. Morrell."  Id.

As Plaintiff alleges, his subscription automatically renewed, and WW charged Plaintiff's

credit card, at the rate described in the Acknowledgement Email beginning in April 2018 (that is,

at the conclusion of Plaintiff's initial promotional period).  Compl. ¶¶ 46, 55.  The subscription

continued to automatically renew on a monthly basis as Plaintiff selected until, according to

Plaintiff, he "lost and promptly deactivated his credit card."  Compl. ¶ 56.  This prompted WW

to ask Plaintiff for an alternate form of payment, which "alerted" him (allegedly for the first

time) that he had been paying for his monthly subscription for more than a year.  Id.

4

## SUMMARY OF PLAINTIFF'S ALLEGATIONS AND CLAIMS

Plaintiff brings five causes of action under California law.  Three causes of action are for alleged violations of (a) California's Unfair Competition Law (the "UCL"), (b) California's False Advertising Law (the "FAL"), and (c) California's Consumers Legal Remedies Act (the "CLRA").  Each of these counts is premised on four alleged violations of the ARL: (1) The offer terms were not "clear and conspicuous" and were not "in visual proximity to the request for consent to the offer"; (2) WW did not obtain affirmative consent from Plaintiff; (3) WW failed to provide an acknowledgement that includes certain "automatic renewal offer terms" described below; and (4) WW did not provide a toll-free telephone number, email address, physical address, or another cost-effective, timely, and easy-to-use mechanism for cancellation.  CAL. BUS. & PROF. CODE §17602.  Plaintiff's fourth cause of action is an unjust enrichment claim that is also reliant upon the alleged ARL violations.  Plaintiff's fifth and final cause of action alleges a violation of a California law regulating "weight loss contracts" that requires a separate disclosure unrelated to the autorenewal subscription.  CAL. CIV. CODE §§ 1694.5, 1694.7, 1694.9.

Each of Plaintiff's claims fail and should be dismissed for the reasons discussed below.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678.  A court may also consider documents attached to a complaint as exhibits, incorporated therein by reference, or relied upon by plaintiff in bringing the suit, as well as any judicially noticeable matters. Roberts v. Weight Watchers Int'l, Inc., 217 F. Supp.3d 742, 746 (S.D.N.Y. 2016) (Koeltl, J.).  If a document relied upon in the complaint contradicts the complaint's allegations, the document, not the allegations, control, and a court need not accept

the allegations in the complaint as true.  Wang v. Palmisano, 51 F. Supp. 3d 521, 528 (S.D.N.Y. 2014).  "The district court can refer to evidence outside the pleadings when resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)."  Broidy Capital Mgmt. LLC v. Benomar, 944 F.3d 436, 441 (2d Cir. 2019) (affirming dismissal for lack of standing under FRCP 12(b)(1)).

## ARGUMENT

Plaintiff's allegations demonstrate that, as a matter of law, WW fully complied with all relevant substantive ARL provisions or alternatively qualifies for the ARL good faith safe harbor.  See CAL. BUS. & PROF. CODE § 17604 ("If a business complies with the provisions of this article in good faith, it shall not be subject to civil remedies.").  As a result, Plaintiff fails to state a claim for violations of the ARL.  And because Plaintiff's UCL, FAL, CLRA, and unjust enrichment claims arise out of alleged violations of the ARL, these claims fail as well.  Plaintiff's UCL, FAL, and CLRA claims should also be dismissed for the separate reason that Plaintiff lacks standing because he cannot allege that his purported economic injury was a result of a failure to disclose Defendant's cancellation policy.  Finally, Plaintiff's "weight loss contract" claim fails because Plaintiff can show no actual harm resulting from the alleged violation.

## I.    PLAINTIFF'S ALLEGATIONS SHOW THAT WW COMPLIED WITH THE ARL.

Although Plaintiff alleges that WW violated the ARL in four separate ways, the Complaint actually shows technical and good faith compliance.  *First*, WW presented the automatic renewal offer terms in a "clear and conspicuous" manner. See CAL. BUS. & PROF. CODE § 17602(a)(1).  *Second*, WW obtained "affirmative consent" before "[c]harg[ing] [Plaintiff's] credit or debit card."  See CAL. BUS. & PROF. § 17602(a)(2).  *Third*, WW provided

an Acknowledgement that included the "automatic renewal offer terms," the cancellation policy, and information regarding how to cancel in a manner capable of being retained.  See CAL. BUS. & PROF. CODE § 17602(a)(3).  *Fourth*, WW provided an "easy-to-use mechanism for cancellation" that was described in the acknowledgement.  See CAL. BUS. & PROF. CODE §17602(b).

Critically, the Complaint makes no allegations regarding an essential element of an ARL claim: the good faith safe harbor.  The ARL provides, "If a business complies with the provisions of [the ARL] in good faith, **it shall not be subject to civil remedies**."  CAL. BUS. & PROF. CODE § 17604 (emphasis provided).  It is therefore insufficient for Plaintiff to allege mere technical violations of the ARL; rather such allegations must rise to the level of bad faith.  See Wang, 51 F. Supp.3d at 531 ("[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint.").  Here, Plaintiff alleges only that WW failed to meet the ARL requirements, but not that WW failed to make a good faith effort at compliance.  Plaintiff cannot credibly do so.  Indeed, as shown below, Plaintiff's own allegations demonstrate that WW fully complied with the ARL requirements or, at the very least, engaged in a good faith attempt to do so.  Counts I, II, III, and IV, each of which requires an ARL violation, should therefore be dismissed.

### A.   WW clearly and conspicuously presented the "automatic renewal offer terms."

Under Section 17602(a)(1) of the ARL, companies offering subscription services must "**present the automatic renewal offer terms** or continuous service offer terms **in a clear and conspicuous manner** before the subscription or purchasing agreement is fulfilled **and in visual proximity**, or in the case of an offer conveyed by voice, in temporal proximity, **to the request**

**for consent to the offer**." Cal. Bus. & Prof. Code § 17602(a)(1) (emphasis supplied). Plaintiff's allegations demonstrate that WW satisfied each of these requirements.

>   **1.    *The "automatic renewal offer terms" were presented on the checkout page.***

The ARL requires companies "to present the automatic renewal offer terms . . . before the subscription or purchasing agreement is fulfilled." Cal. Bus. & Prof. Code § 17602(a)(1). The "automatic renewal offer terms" are: (1) that the subscription will continue until the consumer cancels, (2) the description of the cancellation policy that applies to the offer, (3) the recurring charges that will be charged to the consumer's credit or debit card and the amount to which the charge will change, if it will change, (4) the length of the automatic renewal term, unless the length of the term is chosen by the consumer, and (5) the minimum purchase obligation, if any. Cal. Bus. & Prof. Code § 17601(b). Plaintiff alleges that WW failed to present the first four terms. The evidence offered in support thereof, however, shows just the opposite.

*First*, the Complaint shows (and Plaintiff concedes) that WW disclosed to Plaintiff that his subscription would continuously renew from month to month until he cancelled. See Compl. ¶ 37; Cal. Bus. & Prof. Code § 17601(b)(1). According to the Complaint, after a potential subscriber selects a membership plan and enters credit card information, WW displays a checkout page, which states:

>   **Automatic Renewal and Cancellation:  You** agree that your membership automatically renews at the end of your initial payment plan and you will be charged at the standard monthly fee (currently $20.95 plus tax where **state and local sales tax apply**) until you cancel.  You can cancel at any time by visiting the **Cancellation Policy**.

Compl. ¶ 37. Importantly, WW provides this disclosure **before** the consumer clicks to purchase the subscription and his credit card is charged. See id. The disclosure is located immediately above the "Submit" button. Id. WW thus notified all consumers, including Plaintiff, that the

subscription will renew automatically until the consumer cancels as required under the ARL. See CAL. BUS. & PROF. CODE §§ 17601(b)(1), 17602(a)(1).

*Second*, as the Complaint readily demonstrates, WW provided a description of the relevant cancellation policy that applied to the offer.  See CAL. BUS. & PROF. CODE § 17601(b)(2).  WW's checkout page states: "You can cancel anytime by visiting the **Cancellation Policy**."  Compl. ¶ 37.  The words "Cancellation Policy" appear in blue, boldfaced, and underlined font, indicating that it is a hyperlink to additional information regarding the cancellation policy that applies to the offer.  See id.  Finally, the disclosure also states: "**PLEASE NOTE**: Early termination fee will be applied in the event of cancellation prior to completion of full term."  Id.

Plaintiff nevertheless alleges that WW stating this information—you can "cancel at any time," providing a specific hyperlink to the "Cancellation Policy" page where this can be completed, and an emphasized note that an early termination fee may apply if cancellation occurs prior to the end of the full term—is not a "description" of the cancellation policy because it is not the "full" policy.  Compl. ¶ 44.  Nothing in the ARL suggests that is an obligation WW must undertake.  WW's cancellation policy disclosure met all the ARL requirements, by stating that Plaintiff can cancel "anytime" and that an "[e]arly termination fee will be applied."  Compl. ¶ 37; contra Lopez v. Stages of Beauty, LLC, 307 F. Supp. 3d 1058, 1073 (S.D. Cal. 2018) (not applying good faith safe harbor where the alleged cancellation disclosures did not disclose that "the phone number provided must be called at least one day prior to delivery of the subscriber's next shipment.").  Additional information, such as the phone number used to cancel, would be immaterial and irrelevant on the checkout page because the consumer has not purchased anything, and there is nothing, therefore, to cancel.  Plaintiff points to no material term of the

cancellation policy that is missing from WW's description.  Rather, WW properly and fully described the cancellation policy ("you can cancel at any time" by clicking through the "Cancellation Policy" link, but early termination fees will apply if you cancel prior to the completion of the full term) under the ARL.  See CAL. BUS. & PROF. CODE §§ 17601(b)(2), 17602(a)(1).

*Third*, the Complaint shows that WW disclosed the recurring charges that Plaintiff would incur and if that amount would change.  See CAL. BUS. & PROF. CODE § 17601(b)(3).  The checkout page—the final page before Plaintiff clicked the "Submit" button to complete his purchase, authorizing WW to charge his credit card—states:

> **Automatic Renewal and Cancellation:** You agree that your membership automatically renews at the end of your initial payment plan and you will be charged the standard monthly fee (currently $20.95 plus tax where state and local sales tax apply) until you cancel.

Compl. ¶ 37.  Once again, there can be no credible argument that this disclosure failed to meet the ARL terms on their face.  See CAL. BUS. & PROF. CODE §§ 17601(b)(3), 17602(a)(1).

*Fourth*, the Complaint shows that WW disclosed the "length of the automatic renewal term."  See CAL. BUS. & PROF. CODE § 17601(b)(4).  The checkout page states (as quoted above) that the subscription "automatically renews" at the end of the initial term, and that a subscriber "will be charged the standard monthly fee" until he cancels.  Compl. ¶ 37.  Plaintiff's own allegations thus refute his Complaint's conclusions and plainly establish that WW provided all disclosures regarding the renewal term length required under the ARL.  See CAL. BUS. & PROF. CODE §§ 17601(b)(4), 17602(a)(1).

## 2. *The required terms were displayed "in a clear and conspicuous manner."*

The ARL also requires that the "automatic renewal offer terms" be presented in a "clear and conspicuous manner." CAL. BUS. & PROF. CODE § 17602(a)(1). Plaintiff raises a number of misleading objections that are flatly contradicted by the image of the checkout page that appears in the complaint. Compare Compl. ¶ 37 and Compl. ¶ 40. But where Plaintiff's documents refute the Plaintiff's allegations, the document, not the allegations, control. Wang, 51 F. Supp. 3d at 528. Analyzing the checkout page properly, the Complaint shows that WW complies with all aspects of the ARL's "clear and conspicuous" requirement.

The ARL provides a non-exhaustive, disjunctive list of ways a disclosure can be "clear and conspicuous": "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." CAL. BUS. & PROF. CODE § 17601(c).

The checkout page, as imaged into the Complaint, shows that WW fully complied with all *actual* requirements of the ARL regarding making its disclosures "clear and conspicuous." In truth, the Complaint shows that WW utilized **several** methods expressly authorized by the ARL:

(1) Despite Plaintiff's allegation that the relevant disclosure has no boldface, the paragraph does in fact begin with boldface words "**Automatic Renewal and Cancellation**," which "draws the eye's attention" (Compl. ¶ 40);

(2) The words "Cancellation Policy" are in blue, bold, underlined font, which both sets it off and indicates it is a hyperlink to additional information about the Cancellation Policy; and

(3) The "automatic renewal offer terms" are set off in their own paragraph.

11

Compl. ¶ 37.  Thus, WW satisfies the ARL's mandate to set off the disclosures by using several methods to set off the disclosures: contrasting type (boldface, underline), color (blue),[4] and other marks that clearly call attention to the language (bold header, separate paragraphs).  See CAL. BUS. & PROF. CODE §§ 17601(c), 17602(a)(1).  Furthermore, and as Plaintiff concedes, the "automatic renewal offer terms" constitute a substantial portion[5] of the text (and the only prose) on the checkout page—as opposed to being buried within lengthy, unrelated disclosures—which only further highlights that the terms are plainly "clear and conspicuous."  See id.

### 3. The required terms were "in visual proximity to the request for consent."

"Automatic renewal offer terms" must appear in "visual proximity to the request for consent to the offer."  CAL. BUS. & PROF. CODE § 17602(a)(1).  "[V]isual proximity" is not a defined term under the ARL.  See generally, CAL. BUS. & PROF. CODE §17601.  Plaintiff again tries to add to the law, alleging that the required terms "must appear in the block of text immediately above" the "Purchase Subscription ('Submit') button on [the Checkout] page," Compl. ¶ 44, but that is not the law.  As Plaintiff concedes: "[T]he required terms must appear on the Checkout Page[.]"  Id.  And so they do.  The "automatic renewal offer terms" appear on the checkout page—right above the "Submit" button (that is, the "request for consent.")  See Compl. ¶ 37.  Further, the only text between the "automatic renewal offer terms" and the "Submit" button is a short disclosure seeking agreement with the terms of the subscription ("**Terms and**

---

[4] Plaintiff alleges that the disclosure is presented in gray font, but it does not appear so to Defendant.

[5] According to Plaintiff's estimation, the autorenewal disclosures occupy 40% of the page. Compl. ¶ 40.

**Conditions:**  You understand that your membership is governed by the **Membership Agreement**.  You acknowledge our **Privacy Policy** and **Notice of Privacy Practices**.").  Plaintiff can articulate no reasonable interpretation of "visual proximity" that would make this placement violate the ARL.  As a matter of law, WW fully complies with this provision.  See CAL. BUS. & PROF. CODE § 17602(a)(1).

> ### B.    WW received Plaintiff's affirmative consent to the "automatic renewal offer terms."

Finally, as the last step in the pre-purchase process, the ARL states that companies must obtain "affirmative consent" before "[c]harg[ing] the consumer's credit or debit card."  CAL. BUS. & PROF. § 17602(a)(2).  Plaintiff alleges that WW failed to do so because WW required subscribers to click a check box acknowledging terms "above" the box, but the "automatic renewal offer terms" appear below the box.  Compl. ¶ 45.  This is a red herring.  The ARL does not require any check box.  Indeed, according to Plaintiff's own allegations, the operative "request for consent" to the "automatic renewal offer terms" is the "Submit" button, which appears after the "automatic renewal offer terms;" the check box is related to a different set of disclosures.  Compl. ¶ 37.  Accordingly, even if Plaintiff is correct that the "automatic renewal offer terms" must appear above the "request for consent," WW still fully complied with the ARL as a matter of law.  See CAL. BUS. & PROF. CODE § 17602(a)(2).

> ### C.    WW achieved full compliance with the acknowledgement requirement.

The ARL also imposes a requirement after the purchase subscription is submitted: companies must "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer."  CAL. BUS. & PROF. CODE § 17602(a)(3).  WW complied with this provision by sending the OnlinePlus Receipt.  Compl.

¶ 46.  Plaintiff alleges that this acknowledgement lacked information required by the ARL, but yet again, the Acknowledgement Email (imaged into the Complaint) itself is at odds with Plaintiff's claim.  See Wang, 51 F. Supp. 3d at 528.

*First*, the OnlinePlus Receipt contains the "automatic renewal offer terms" by:  (1) confirming that "the subscription automatically renews at the end of your payment plan," (2) describing the cancellation policy that applies to the offer, (3) stating that Plaintiff would be charged $19.95 per month after the initial term, and (4) identifying the length of the automatic renewal term (monthly after the initial period).  Id.  Moreover, it states that "[y]ou can review your membership details at any time by visiting your account status page," which includes a hyperlink to that page.  Id.

*Second*, the OnlinePlus Receipt includes the cancellation policy by summarizing it:  "[The] subscription automatically renews at the end of your payment plan at the standard monthly rate (plus tax for New York) until you cancel" and then expressly states, "Instructions on how to cancel are located in the Help section of the site."  Id.

*Third*, the OnlinePlus Receipt was provided "in a manner that is capable of being retained by the consumer."  As shown, the OnlinePlus Receipt was delivered via email, and Plaintiff could print or otherwise keep the OnlinePlus Receipt (which he clearly has).  Compl. ¶ 46.

The only conceivable quibble Plaintiff could have about this Acknowledgement Email is, as before, that it lacked the full cancellation policy.  Yet again, Plaintiff is asking the Court to create new laws.  Plaintiff's allegations show that the Acknowledgment Email included the cancellation policy ("your subscription will automatically renew . . . until you cancel[]") and information regarding how to cancel ("instructions on how to cancel are located in the Help section of the site[]").  Compl. ¶ 46.  WW's cancellation policy disclosure met all the ARL

requirements, by stating that Plaintiff can cancel "at any time" and that Plaintiff can visit WW's "Help" webpage for information on how to cancel. Compl. ¶ 37. Accordingly, WW fully complied with the ARL. See CAL. BUS. & PROF. CODE § 17602(a)(2).

**D.    WW provided an easy-to-use cancellation method.**

Under the ARL, companies must "provide a toll-free telephone number, email address . . . or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgement specified in paragraph (3) of subdivision (a)." CAL. BUS. & PROF. CODE §17602(b). Plaintiff alleges that WW did not provide any toll-free phone number for subscribers to cancel, but Plaintiff's own allegations identify such a number. See Compl. ¶ 22. Further, in the Acknowledgement Email, WW directs clients to the "Help" page for assistance cancelling online. Compl. ¶ 46. WW has therefore provided two methods of cancellation.

**E.    WW qualifies for good faith safe harbor.**

As shown in the preceding sections, and contrary to Plaintiff's allegations, WW complied with each requirement of the ARL. But even if Plaintiff had alleged some potential shortcoming in WW's strict compliance with a single provision of any component of the ARL (which he has not done), it is readily apparent on the face of the Complaint that WW made a good faith effort to comply with such requirement. "If a business complies with the provisions of [the ARL] in good faith, **it shall not be subject to civil remedies**." CAL. BUS. & PROF. CODE § 17604 (emphasis provided). Although good faith is typically an issue of fact, here, where the standard is built into the statutory scheme, the Court—which is ultimately the finder of fact under California law for these claims—is empowered to make a finding if demonstrated on the face of the Complaint. Cf. Wholean v. CSEA SEIU Local 2001, 955 F.3d 332, 336 (2d Cir. 2020) (granting motion to dismiss based on good faith defense where union had relied on then-controlling law permitting

collection of "fair-share" fees from non-union members); <u>Seidemann v. Prof'l Staff Cong. Local 2334</u>, 432 F. Supp. 3d 367, 386 (S.D.N.Y. 2020), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Seidemann v. Prof'l Staff Cong. Local 2334, Am. Fed'n of Teachers AFL-CIO</u>, No. 20-460, 2021 WL 79162 (2d Cir. Jan. 11, 2021) (granting motion to dismiss based on good faith defense in a § 1983 suit where "all the information the Court need[ed] to make its finding appear[ed] on the face of the" complaint); <u>Adelson v. Harris</u>, 973 F. Supp. 2d 467, 503 (S.D.N.Y. 2013), <u>aff'd</u>, 876 F.3d 413 (2d Cir. 2017) (granting 12(b)(6) motion where plaintiff failed to plead bad faith). Here, Plaintiff's allegations show that WW disclosed every element of the ARL in some form, and Plaintiff only alleges, at worst, arguably technical shortcomings that are not directly required by the ARL. Furthermore, Plaintiff makes <u>no</u> allegation that WW took any action in bad faith. Indeed, Plaintiff cannot. To the contrary, the face of the Complaint clearly shows that WW attempted in good faith to satisfy each and every one of the ARL requirements, and so the Complaint should be dismissed as a matter of law.

## II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE UCL, FAL, CLRA, OR FOR UNJUST ENRICHMENT.

Plaintiff's claims under the UCL, FAL, and CLRA[6] and for unjust enrichment are entirely dependent on alleged ARL violations. <u>See</u> Compl. ¶ 110. Because Plaintiff fails to identify any ARL violations, the UCL, FAL, CLRA, and unjust enrichment claims must also fail.

---

[6] Plaintiff is not entitled to a jury trial on these statutory claims, and the Court is therefore the ultimate finder-of-fact for these issues. <u>Nationwide Biweekly Admin. Inc. v. Sup. Ct. of Alameda Cty.</u>, 9 Cal. 5th 279, 305 (Cal. Sup. Ct. 2020) (holding that there is no statutory or state constitutional right to a jury trial under the UCL or FAL).

### III. PLAINTIFF LACKS STANDING UNDER THE UCL, FAL, AND CLRA BECAUSE HE CANNOT ALLEGE INJURY-IN-FACT.

In addition to the foregoing, Plaintiff does not have standing to bring any claims based on the alleged failure to disclose WW's cancellation policy because he suffered no actual harm therefrom. Under the UCL, FAL, and CLRA claims, a plaintiff must have suffered injury-in-fact as a result of each purported violation in order to pursue the claim. See CAL. BUS. & PROF. CODE § 17204; Bass v. Facebook, Inc., 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) ("In order to establish standing for Section 17200 and the CLRA, plaintiffs must show that they personally lost money or property as a result of the unfair competition."). To do so, Plaintiff must allege that his economic injury was "*as a result of*" the alleged violations. See id. Plaintiff has not.

The Complaint is devoid of these crucial causation allegations. Plaintiff has alleged no harm resulting from any lack of disclosure of the cancellation policy on the checkout page, the Acknowledgment Email, or otherwise. According to the Complaint, Plaintiff's auto-immune disorder began to develop "[a]t some point in January 2018," and the "thought of cancelling his WW subscription never occurred to him." Compl. ¶ 54. Assuming such allegation is true, Plaintiff's allegations demonstrate that had WW provided the extra-statutory details about the cancellation policy that Plaintiff demands (beyond that which is plainly stated on the checkout page and in the Acknowledgment Email), the "thought of cancelling his WW subscription" would **still have** "never occurred to him." See id. Plaintiff therefore has alleged no harm "as a result of" WW's allegedly faulty disclosure regarding its cancellation policy. Accordingly, claims under the UCL, FAL, and CLRA regarding the cancellation policy should be dismissed.

### IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER § 1694.7(b).

To properly state a claim under California Civil Code § 1694.7(b), Plaintiff must allege that Defendant failed to provide certain language as prescribed in that statute and that he was

"injured by [the] violation." Cal. Civ. Code § 1694.9(c).  He fails to do so.  The required statutory language is:

> You, the buyer, may cancel this agreement, without any penalty or obligation, at any time prior to midnight of the original contract seller's third business day following the date of this contract, excluding Sundays and holidays. To cancel this agreement, mail or deliver a signed and dated notice, or send a telegram which states that you, the buyer, are canceling this agreement, or words of similar effect.

Cal. Civ. Code § 1694.7(b).  Because the language only gives consumers the right to void the contract within three business days, any claim of harm resulting from a failure to provide this disclosure must be accompanied by an allegation that Plaintiff would have tried to cancel *within the three business day* period.  See McKean v. ABC Fin. Servs., Inc., 2019 WL 5684403 (S.D. Cal. Nov 1, 2019) (dismissing claims under California statute requiring disclosure of 30-day cancellation period because plaintiff did not allege attempt to cancel within 30-day period).

Plaintiff has made no such allegation.  To the contrary, Plaintiff admits he purchased his WW subscription on January 3, 2018 and used WW's app and services until "[a]t some point in January 2018" he "became ill with an auto-immune disorder," causing him to lose the use of his arms and legs.  Compl. ¶¶ 54, 56.  Plaintiff fails to allege, however, that he developed his illness (that is, the necessary impetus to cancel) within the three-business-day statutory period after January 3, 2018.[7]  Absent that allegation, Plaintiff cannot, as a matter of law, establish that he suffered any harm or loss as a result of any failure to provide him with this notice.  Accordingly, the claim is fatally deficient.

---

[7] January 3, 2018, being a Wednesday, Plaintiff must allege that he would have cancelled on or before January 8, 2018.

18

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.


Dated:  February 19, 2021                              Respectfully submitted,
                                                       MORGAN, LEWIS & BOCKIUS LLP

                                                       */s/ Collie F. James, IV*
                                                       Collie. F. James, IV (*pro hac vice*)
                                                       600 Anton Blvd., Suite 1800
                                                       Costa Mesa, CA 92626
                                                       T:  +1.714.830.0600
                                                       F:  +1.714.830.0700
                                                       collie.james@morganlewis.com

                                                       Jonathan H. Levy
                                                       101 Park Avenue
                                                       New York, NY 10178
                                                       T:  +1.212.309.6000
                                                       F:  +1.212.309.6001
                                                       jonathan.levy@morganlewis.com


                                                       *Attorneys for Defendant*
                                                       *WW International, Inc.*

## CERTIFICATE OF COMPLIANCE

I, Collie F. James, IV, certify that the Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint contains 5,570 words and complies with the formatting rules in Your Honor's Individual Practices Section II.D.

By:     */s/ Collie F. James, IV*
          Collie F. James, IV

## CERTIFICATE OF SERVICE

I, Collie F. James, IV, certify that on February 19, 2021, I caused the Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint to be filed with the Clerk of the Court and to be served on all counsel of record by ECF.


By:     */s/ Collie F. James, IV*
        Collie F. James, IV