**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**LEE MORRELL, individually and on behalf of all others similarly situated,**

                    **Plaintiff,**

      **- against -**

**WW INTERNATIONAL, INC.,**

                  **Defendant.**

---

20-cv-9912 (JGK)

MEMORANDUM OPINION
AND ORDER

**JOHN G. KOELTL, District Judge:**

The plaintiff, Lee Morrell, brings this putative class action on behalf of himself and all others similarly situated against the defendant, WW International, Inc. ("WW"), alleging violations of California state consumer protection laws. The plaintiff brings five California state law claims: (1) violation of the Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; (2) violation of the False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.; (3) violation of the Consumers Legal Remedies Act (the "CLRA"), Cal. Civ. Code §§ 1750 et seq.; (4) unjust enrichment or restitution; and (5) violation of the Weight Loss Contracts Act (the "WLCA"), Cal. Civ. Code §§ 1694.5 et seq. The first four claims are based on allegations that the defendant violated California's Automatic Renewal Law (the "ARL"), Cal. Bus. & Prof. Code §§ 17600 et seq. The plaintiff asserts subject matter

jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), alleging that there are more than one hundred class members, the aggregate amount in controversy exceeds five million dollars, and there is diversity of citizenship in that most of the plaintiffs are citizens of California and the defendant is a citizen of Virginia and New York. The defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the motion to dismiss is **granted in part and denied in part**.

**I.**

The following allegations are accepted as true for purposes of the defendant's motion to dismiss.

WW is an international company incorporated in Virginia, with its principal place of business in New York. Complaint ("Compl."), ECF No. 1, ¶¶ 1, 11. WW offers monthly and yearly subscriptions to assist customers in developing healthy habits. Id. ¶ 1. Subscription plans include services ranging from meal tracking to personal coaching and in-person wellness checks. Id. ¶ 2. These subscriptions can be purchased through the defendant's website or mobile application. Id. ¶ 3.

The plaintiff is a citizen and resident of California. Id. ¶ 10. On or around January 3, 2018, the plaintiff purchased a three-month membership from the defendant, using the defendant's

mobile application while in California. Id. On January 4, 2018, the plaintiff was charged $44.85 for this three-month membership. Id. ¶ 55. On April 4, 2018—three months after the plaintiff originally signed up for his WW Subscription—the defendant automatically renewed the plaintiff's subscription, charging him the standard monthly rate of $19.95. Id. ¶¶ 10, 55. The defendant continued to charge the plaintiff $19.95 per month for the next sixteen months. Id. ¶ 55. The plaintiff alleges that none of these "eighteen . . . charges amounting to $384.00" were authorized. Id. ¶ 10; see also id. ¶ 55. The plaintiff asserts that at some point during January 2018—the month in which he subscribed to WW—he became ill with an auto-immune disorder that prevented him from using his arms or legs, and he "immediately discontinued use of the WW App and any and all other products and services associated with his WW Subscription." Id. ¶ 54. However, because the plaintiff "was not expecting the WW Subscription to automatically renew, the thought of cancelling his WW Subscription never occurred" to the plaintiff. Id.

The plaintiff brings this putative class action on behalf of "all persons in California who, within the applicable statute of limitations period . . . incurred renewal fee(s) in connection with [the d]efendant's WW Subscription offerings." Id. ¶ 64.

Before a customer finalizes a purchase through WW's website or mobile application, the potential customer is directed to a checkout page. <u>Id.</u> ¶ 37. On this page, the customer is given information about the subscription plan and pricing ("Initial Disclosure"). <u>Id.</u> The Initial Disclosure, as displayed on the checkout page and as available to the plaintiff before he completed his purchase, is reproduced below:



Id.

After the customer checks off the required disclaimer box
and submits the form, thus completing the purchase, the customer

receives an acknowledgment email ("Acknowledgement Email"). Id.
¶ 10. The Acknowledgment Email includes information about the
payment and selected plan, with a sentence stating that the
"subscription will be automatically renewed at the end of [the]
payment plan at the standard monthly rate." Id. ¶ 46. The
Acknowledgment Email that was sent to the plaintiff after he
completed his purchase is reproduced below:



Id.

The plaintiff alleges that he was not aware that his
subscription would renew automatically when he purchased it. Id.
¶ 10. Indeed, the plaintiff alleges that he did not discover the

autorenewal and subsequent charges until the defendant notified him that his payment authorization had failed on September 3, 2019. Id. ¶ 56. The plaintiff alleges that neither the Initial Disclosure nor the Acknowledgment Email alerted him to "the fact that his WW Subscription would automatically renew after the initial three-month period." Id. ¶ 10.

In the Complaint, the plaintiff has provided examples of other WW customers raising similar grievances about WW's automatic renewal of subscriptions on social media and consumer protection websites such as the site for the Better Business Bureau. See id. ¶¶ 19-23.

## II.

When presented with motions under both Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the first issue is whether the Court has the subject matter jurisdiction necessary to consider the merits of the action. See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990); Abrahams v. App. Div. of the Sup. Ct., 473 F. Supp. 2d 550, 554 (S.D.N.Y. 2007), aff'd on other

grounds, 311 F. App'x 474 (2d Cir. 2009); see also SEC v. Rorech, 673 F. Supp. 2d 217, 220-21 (S.D.N.Y. 2009).[1]

To prevail against a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id.; Graubart v. Jazz Images, Inc., No. 02-cv-4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). When evaluating whether a plaintiff has constitutional standing to sue, the courts "borrow from the familiar Rule 12(b)(6) standard, construing the complaint in plaintiff's favor and accepting as true all material factual allegations contained therein."

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal citations, emphasis, omissions, quotation marks, and footnotes in quoted text.

Donoghue v. Bulldog Invs. Gen. P'ship, 696 F.3d 170, 173 (2d
Cir. 2012).

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007). The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985). The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009). While the Court should construe the factual allegations
in the light most favorable to the plaintiff, "the tenet that a
court must accept as true all of the allegations contained in a
complaint is inapplicable to legal conclusions." Id.

### III. Rule 12(b)(1)

The defendant has moved to dismiss the complaint under
Federal Rule of Civil Procedure 12(b)(1), arguing that the Court

does not have subject matter jurisdiction over the plaintiff's claim because the plaintiff lacks standing. For the reasons that follow, the defendant's 12(b)(1) motion is denied.

To satisfy the constitutional requirement of Article III standing, the plaintiff "must show (i) that [the plaintiff] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021); see also Crupar-Weinmann v. Paris Baguette Am., Inc., 861 F.3d 76, 79-80 (2d Cir. 2017) (citing Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1545, 1548 (2016)).

In this case, the plaintiff has pleaded facts sufficient to demonstrate Article III standing. The plaintiff has alleged that he suffered an economic injury because he would not have made the initial payment or renewed the plan if he had been aware of the automatic renewal. "When, as here, [the p]laintiff[] contend[s] that [he] paid more for a product than [he] otherwise would have paid, or bought it when [he] otherwise would not have done so," he has "suffered an Article III injury in fact." Hinojos v. Kohl's Corp., 718 F.3d 1098, 1104 n.3 (9th Cir. 2013); see also Marino v. Coach, Inc., 264 F. Supp. 3d 558, 564-65 (S.D.N.Y. 2017) (economic harm resulting from an alleged violation of California's consumer protection laws was

sufficient to establish Article III injury in fact). The plaintiff's allegation that he suffered a real and tangible economic harm satisfies the requirement that the harm be concrete, particularized, and actual. See Boelter v. Hearst Commc'ns, Inc., 192 F. Supp. 3d 427, 438 (S.D.N.Y. 2016).

The defendant has argued in support of its Rule 12(b)(1) motion that the plaintiff lacks "statutory standing"; however, that argument does not support a Rule 12(b)(1) motion. See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 359 (2d Cir. 2016) ("The Supreme Court has recently clarified . . . that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute'" and that "[t]his inquiry 'does not belong' to the family of standing inquiries, because 'the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case.'")(quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 & n.4 (2014)). Instead, such arguments are more correctly raised in support of a Rule 12(b)(6) motion. Accordingly, the defendant's motion to dismiss pursuant to Rule 12(b)(1) is denied.

## IV. Rule 12(b)(6)

The plaintiff has brought five California state law claims: (1) violation of the UCL; (2) violation of the FAL; (3) violation of the CLRA; (4) unjust enrichment or restitution; and (5) violation of the WLCA. All but the WLCA allegations are based on violations of the ARL.

### A. CLRA, UCL, and FAL

The defendant argues that the plaintiff has failed to state a claim for violations of the CLRA, UCL, or FAL, both because he has failed to alleged harms cognizable under the CLRA, UCL, and FAL, and because he has failed to allege a violation of the ARL. The ARL makes it unlawful for a business making an automatic renewal offer to a consumer in California to (1) "[f]ail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer"; (2) "[c]harge the consumer's credit or debit card . . . for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement"; or (3) "[f]ail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer."

13

Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3). Although the ARL does not provide an independent private cause of action, Mayron v. Google LLC, 269 Cal. Rptr. 3d 86, 88-91 (Ct. App. 2020), courts applying California law have recognized that a "consumer who has been harmed by a violation of the ARL may bring a claim pursuant to other [California] consumer protection statutes, including the FAL, CLRA, and UCL." Arnold v. Hearst Mag. Media, Inc., No. 19-cv-1969, 2021 WL 488343, at *6 (S.D. Cal. Feb. 10, 2021); see also Johnson v. Pluralsight, LLC, 728 F. App'x 674, 677 (9th Cir. 2018).

## 1.

The defendant argues that the plaintiff has failed to state a claim under the CLRA, UCL, or FAL, because he has failed to allege an injury or harm cognizable under the CLRA, UCL, or FAL.

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices . . . in a transaction," including "[r]epresenting that goods or services have . . . characteristics . . . that they do not have" and "[a]dvertising goods or services with intent not to sell them as advertised." Cal. Civ. Code §§ 1770(a)(5), (9). The CLRA provides a private cause of action for "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by" the CLRA. Id. § 1780(a).

14

The defendant argues that the plaintiff is unable to bring a claim under the CLRA because the plaintiff has failed to allege "any damage" that was "a result of" any alleged actions by the defendant in violation of the CLRA. See id. However, courts applying California law have clarified that "any damage" has a broad definition, including pecuniary damages as well as transaction and opportunity costs. See e.g., Meyer v. Sprint Spectrum L.P., 200 P.3d 295, 299 (Cal. 2009). Further, courts applying California law have often found that a consumer who purchased products in reasonable reliance on the defendant's misleading representations or advertising have suffered "damage" sufficient to bring a claim under the CLRA. See, e.g., Jou v. Kimberly-Clark Corp., No. 13-cv-3075, 2013 WL 6491158, at *3 (N.D. Cal. Dec. 10, 2013) (plaintiffs plausibly alleged damage within the meaning of the CLRA where "they would not have purchased the products if they did not include the [defendant's] alleged misrepresentations").[2]

In this case, the plaintiff has alleged that he subscribed to WW because of the promotion being offered, and, as a result of the defendant's defective disclosures, he was not aware that

---

[2] To the extent that the defendant has sought to argue that no reasonable consumer could possibly have been misled by the defendant's disclosures, the Court could not decide, as a matter of law, that no reasonable consumer could have been misled or deceived as a result of the allegedly insufficient disclosures in the Acknowledgement Email.

his subscription would automatically renew. Additionally, the plaintiff has said that he was incapacitated by an auto-immune disorder that prevented him from using his arms or legs, and that he was unaware of the additional charges. Compl. ¶ 54. Accordingly, the plaintiff has alleged that he suffered pecuniary damages as a result of the defendant's alleged violation of the CLRA, based on violations of the ARL. Thus, the plaintiff has pleaded facts sufficient to state a claim under the CLRA.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "A person who has suffered injury in fact and has lost money or property as a result of the unfair competition" has a cause of action under the UCL. Id. § 17204; Kwikset Corp. v. Superior Court, 246 P.3d 877, 889-91 (Cal. 2011). The FAL makes it unlawful for any person to engage knowingly in unfair or misleading advertising, Cal. Bus. & Prof. Code § 17500, and provides a private cause of action for "[a]ny person who has suffered injury in fact and has lost money or property as a result of a violation of [the FAL]." Id. § 17535; see also Chapman v. Skype, 162 Cal. Rptr. 3d 864, 873 (Ct. App. 2013). In relevant part, the FAL permits a court to "make such orders or judgments . . . which may be necessary to restore to any person

16

in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful." Cal. Bus. & Prof. Code § 17535; see, e.g., Colgan v. Leatherman Tool Grp, Inc., 38 Cal. Rptr. 3d 36, 58 (Ct. App. 2006) ("The False Advertising Law . . . authorize[s] a trial court to grant restitution to private litigants.").

To state a claim under the UCL, a plaintiff "must allege that the defendant's misrepresentations were an immediate cause of injury-causing conduct." In re Tobacco II Cases, 207 P.3d 20, 40 (Cal. 2009). The FAL also has a causation requirement. See Shaeffer v. Califia Farms, LLC, 258 Cal. Rptr. 3d 270, 277 (Ct. App. 2020). A plaintiff may establish causation by showing that in the absence of the defendant's misrepresentation or omission, "the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." In re Tobacco II Cases, 270 P.3d at 40. However, a plaintiff need not allege that "those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." Id.[3] The defendant argues that the plaintiff is unable to bring a claim under the UCL or

---

[3] The requirement that a private plaintiff seeking to bring a claim under the UCL must have "suffered injury and lost money or property" was added by Proposition 64, passed in 2004. See Californians for Disability Rights v. Mervyn's LLC, 138 P.3d 207, 209 (Cal. 2006). This requirement is also applicable to private plaintiffs seeking to bring a claim under the FAL. See Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1136-37 (C.D. Cal. 2005).

FAL because he has not suffered an "injury in fact" within the meaning of the UCL or FAL, because the defendant has not alleged an injury caused by any alleged violation of the UCL or FAL. However, the plaintiff has alleged that he lost money as a result of the defendant's alleged violations of the FAL and UCL, because he has alleged that he was unaware of the automatic renewals for his subscription as a result of WW's defective disclosures. He alleges that these allegedly defective disclosures caused him to spend money on services he never intended to purchase. Compl. ¶¶ 85, 97. Courts applying California law have recognized that an individual who has lost money on goods sold in violation of the state's consumer protection laws has suffered a sufficient "injury in fact" within the meaning of the UCL and FAL to support a claim under those statutes. See, e.g., Kwikset Corp., 246 P.3d at 884-85; see also Cal. Bus. & Prof. Code §§ 17204, 17535. Accordingly, the facts pleaded are sufficient to allow a cause of action under the UCL and FAL, respectively, based on alleged violations of the ARL.

## 2.

The defendant has also argued that the plaintiff has failed to plead facts sufficient to allege a violation of the ARL. In this case, the plaintiff has alleged that the defendant violated the ARL both in the Initial Disclosure and the

Acknowledgment Email, and has provided screenshots of both
allegedly defective disclosures.

The plaintiff has alleged that the Initial Disclosure is
neither "clear and conspicuous" nor "in visual proximity . . .
to the request for consent," in violation of Cal. Bus. & Prof.
Code § 17602(a)(1). Specifically, the plaintiff argues that the
Initial Disclosure is not clear and conspicuous because the
Initial Disclosure is smaller than some of the other text.
Further, the plaintiff argues that the Initial Disclosure
appears in the same font and color as the surrounding text. The
plaintiff has also argued that the Initial Disclosure is not in
visual proximity to the request for consent because the terms do
not "appear in the block of text immediately above the [Submit]
button." Compl. ¶ 44. Finally, the plaintiff has alleged that
the defendant used a "browsewrap" agreement that does not
manifest the plaintiff's affirmative consent to the automatic
renewal terms.

Based on the screenshots and the facts alleged, the
plaintiff has failed to state a claim that the Initial
Disclosure violated the ARL. First, the ARL requires that the
automatic renewal offer terms are presented before the
subscription is fulfilled. Cal. Bus. & Prof. Code § 17602(a)(1);
see also id. § 17601(b). The Initial Disclosure notified
potential customers that the subscription would renew

automatically, included a description of the cancellation
policy, and stated the recurring charge amount. Second, these
terms are presented in a "clear and conspicuous manner." <u>Id.</u>
§ 17601(b)(1). In this case, the terms are set out in their own
paragraph which begins with boldface text entitled
"Automatic Renewal and Cancellation" and includes hyperlinked
text (indicated by blue font and underlining). The usage of
"contrasting type, font, [and] color . . . clearly calls
attention to the language," thus satisfying the requirement that
the disclosure be clear and conspicuous. <u>See</u> Cal. Bus. & Prof.
Code § 17601(c); <u>see, e.g.</u>, <u>Hall v. Time, Inc.</u>, No. 20-cv-55354,
2021 WL 2071991, at *1-2 (9th Cir. May 24, 2021). Third, these
terms appear "in visual proximity . . . to the request for
consent," because they appear in close proximity to the "Submit"
button. Cal. Bus. & Prof. Code § 17602(a)(1). Finally, the
defendant does not "charge the consumer's credit or debit card .
. . without first obtaining the consumer's affirmative consent."
<u>Id.</u> § 17602(a)(2). Requiring that a customer click both the
consent button and the "Submit" button in order to complete the
transaction provides a clear manifestation of the customer's
affirmative consent to the agreement, in satisfaction of Cal.
Bus. & Prof. Code § 17602(a)(2).

    The plaintiff's reliance on cases in which courts have
found "browsewrap agreements" to be unenforceable is misplaced

because, in this case, the plaintiff was required actively to manifest assent to the Terms and Conditions of the transaction. By contrast, in the cases upon which the plaintiff relies, the plaintiffs were not required to click explicitly on a button after being given an opportunity to review the terms. McKee v. Audible, Inc., No. 17-cv-1941, 2018 WL 2422582, at *11 & n.13 (Cal. Super. March 25, 2019) ("Browsewrap exists where the online host dictates that assent is given merely by using the site."); Meyer v. Kalanick, 200 F. Supp. 3d 408, 418 (S.D.N.Y. 2016) (refusing to enforce agreement where plaintiff "did not have to click any button explicitly indicating assent to Uber's User Agreement"), vacated sub nom. Meyer v. Uber Techs., Inc., 868 F.3d 66 (2d Cir. 2017); see also Lopez v. Terra's Kitchen, 331 F. Supp. 3d 1092, 1098 (S.D. Cal. 2018) ("[T]he agreement at issue in this case is a browsewrap agreement because the consumer assents to the Terms & Conditions simply by using the website or purchasing a subscription . . . even acknowledging that use of the website constitutes assent to the Terms & Conditions."). Accordingly, the plaintiff has failed to allege facts sufficient to establish that the Initial Disclosure violates the ARL.

The defendant argues that the plaintiff has also failed to allege facts sufficient to establish that the Acknowledgment Email violates the ARL. The ARL requires a business making an

automatic renewal offer to "provide an acknowledgment that
includes the automatic renewal offer terms or continuous service
offer terms, cancellation policy, and information regarding how
to cancel in a manner that is capable of being retained by the
consumer." Cal. Bus. & Prof. Code § 17602(a)(3). The defendant
argues that it has satisfied these requirements. First, the
defendant argues that the Acknowledgment Email includes all of
the terms required by Cal. Bus. & Prof. Code § 17602(a)(3).
Further, the defendant argues that the Acknowledgment Email
adequately describes the cancellation policy by noting that the
"subscription will be automatically renewed at the end of your
payment plan at the standard monthly rate . . . until you
cancel. (Instructions on how to cancel are located in the Help
section of the site.)" Compl. ¶ 46. Further, the defendant
argues that email is "a manner capable of being retained by the
consumer." Finally, the defendant argues that it offers two
easy-to-use cancellation mechanisms: a toll-free phone number
and online cancellation via the "Help page."

However, the defendant's arguments are unpersuasive. It is
true that the Acknowledgment Email is in a medium capable of
being stored, includes a note that the "subscription will be
automatically renewed at the end of [the] payment plan," and
states the next billing fee following automatic renewal.
However, the defendant fails to provide any information about

the cancellation policy in the Acknowledgement Email and merely
states "instructions on how to cancel are located in the Help
section of the [WW] site." Compl. ¶ 46; see, e.g., Lopez v.
Stages of Beauty, LLC, 307 F. Supp. 3d 1058, 1071-72 (S.D. Cal.
2018). The "Help" section is not even hyperlinked; and, no
summary of, or clear means of accessing, the cancellation policy
that was referenced in the Initial Disclosure is provided. The
defendant argues that this statement is a sufficient summary of
the cancellation policy, but provides no support for this
assertion. Moreover, the Acknowledgment Email does not describe
a "timely[] and easy-to-use cancellation method," as required by
Cal. Bus. & Prof. Code § 17602(b). Indeed, the Acknowledgment
Email simply directs customers to the "Help" page, without any
clear means of accessing the cancellation policy that was
previously hyperlinked in the Initial Disclosure. Thus, the
plaintiff has made a plausible showing that an ARL violation
occurred in connection with the Acknowledgment Email.

The defendant has argued that the plaintiff's complaint
should be dismissed because the defendant is entitled to the
ARL's good faith safe harbor. Section 17604 provides a safe
harbor "[i]f a business complies with the provisions of [the
ARL] in good faith." Cal. Bus. & Prof. Code § 17604(b). However,
on a motion to dismiss pursuant to Rule 12(b)(6), the Court
cannot determine the defendant's alleged good faith on the

23

pleadings. The defendant has not cited any authority applying the ARL's safe harbor provision on a motion to dismiss. See Lopez, 307 F. Supp. 3d at 1073. Moreover, contrary to the defendant's assertions, the Complaint does not clearly establish as a matter of law that WW attempted in good faith to satisfy all of the ARL requirements. For example, the defendant's failure to include in the Acknowledgment Email either details regarding the cancellation policy for automatic renewals or to hyperlink the cancellation policy undermines the defendant's claim that it has acted in a good faith attempt to comply with the ARL's provisions.

### B. Unjust Enrichment

The plaintiff has also brought a claim for unjust enrichment, based on the defendant's alleged ARL violations. The plaintiff alleges that the defendant was able to secure money from him by violating the ARL and has thus been unjustly enriched by retaining these profits. Compl. ¶ 110. The defendant has argued that the plaintiff's unjust enrichment claim fails as a matter of law because California law does not provide for a standalone cause of action for unjust enrichment.[4]

---

[4] The defendant has raised its argument that California does not have a standalone cause of action for unjust enrichment for the first time in its reply brief. Generally, the Court need not consider arguments raised for the first time in a reply brief. Mateo v. Bristow, No. 12-cv-5052, 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013).

"When confronted with a claim for unjust enrichment, courts [applying California law] should overlook the label [of 'unjust enrichment'] and determine if the plaintiff states a claim for restitution." Dutcher v. Google LLC, No. 20-cv-366905, 2021 WL 628347, at *6 (Cal. Super. Jan. 27, 2021). Thus, the plaintiff's purported cause of action for unjust enrichment should be "construe[d] . . . as an attempt to plead a cause of action giving rise to a right to restitution." McBride v. Boughton, 20 Cal. Rptr. 3d 115, 121 (Ct. App. 2004).

The ARL explicitly provides that any products or services delivered to consumers in violation of its provisions "shall for all purposes be deemed an unconditional gift to the consumer." Cal. Bus. & Prof. Code § 17603. "In other words, when a product is delivered to a consumer in violation of the ARL, it is not considered a product that has been sold, but is considered a gift." Lopez, 307 F. Supp. 3d at 1070. Therefore, "when the [d]efendant collected money for that gift, it injured [the p]laintiff." Id.

In this case, the plaintiff's claim can be construed as an attempt to plead a cause of action giving rise to a right of restitution. The plaintiff has plausibly alleged that the defendant violated the ARL, and goods or services delivered in violation of the ARL "shall for all purposes be deemed an unconditional gift to the consumer." Cal. Bus. & Prof. Code

§ 17603. Based on the plaintiff's allegations of an ARL violation, the defendant's acceptance of money for the "unconditional gift" could give rise to a claim for unjust enrichment or restitution. See Lopez, 307 F. Supp. 3d at 1070; see also Dutcher, 2021 WL 628347, at *6. Therefore, the defendant's motion to dismiss this claim is denied.

### C. WLCA

Finally, the plaintiff has alleged that the defendant violated California's WLCA. Because WW is a "weight loss program" that offers "[i]nstruction, counseling, supervision, or assistance" in "diet" and "eating habits" within the meaning of the WLCA, contracts between WW and its customers are governed by the WLCA provisions. See Cal. Civ. Code § 1694.5(a).

Under the WLCA, a buyer has the right to cancel a weight loss contract "until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase those services." Id. § 1694.6(a). Additionally, weight loss programs must include a conspicuous statement in their contracts notifying buyers and potential buyers of their right to cancel the agreement within three business days without any penalty or obligation. Id. § 1694.7(b). The WLCA also provides a private cause of action for "[a]ny buyer injured by a violation of" the WLCA to "bring an action for the recovery of damages." Id. § 1694.9(c).

26

The plaintiff has pleaded that the Terms and Conditions did not include any language akin to that required by Cal. Civ. Code § 1694.7(b). Compl. ¶ 115. The defendant argues that the plaintiff has not plausibly alleged that he was a "buyer injured" by the defendant's alleged failure to provide the notice required by the WLCA, and thus has failed to state a claim under the WLCA, because the plaintiff did not allege any attempt to cancel within the three-day cancellation window. However, the plaintiff has alleged specifically that had the defendant adequately presented the requisite disclosure, the plaintiff would have been aware of the automatic renewal, and would have either chosen not to subscribe to WW or would have canceled his subscription within the three-day grace period. Compl. ¶ 117. These allegations are sufficient to plead an injury caused by a violation of the WLCA and to state a claim under the statute. Accordingly, the plaintiff has made a showing sufficient to survive a motion to dismiss pursuant to Rule 12(b)(6).

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the motion to dismiss is **granted in part and denied in part**. The Clerk is directed to close Docket Nos. 10 and 16.

**SO ORDERED.**

Dated:   **New York, New York**
         **July 27, 2021**                **/s/ John G. Koeltl**
                                     **John G. Koeltl**
                            **United States District Judge**